**F. COUTHOUI, Inc., v. UNITED STATES.**

No. M–64.

Court of Claims.

Dec. 7, 1931.

from October 30, 1926, to September 30, 1930, inclusive. Within due time, the plaintiff filed a claim for refund of this tax on the ground that the statutes under which it was imposed were unconstitutional. The Commissioner denied the claim and the plaintiff has brought suit thereon. The only issue in the case is as to the validity of the act.

The statutes under which the tax was imposed are section 500 (a) (2) of the Revenue Act of 1926, and section 412 of the Revenue Act of 1928 (26 USCA § 871 (a) (2), which amends paragraph (2) of subdivision. (a) of section 500 of the earlier act to read as follows: "(2) Upon tickets or cards of admission to theaters, operas, and other places of amusement, sold at news stands, hotels, and places other than the ticket offices of such theaters, operas, or other places of amusement, at not to exceed 75 cents in excess of the sum of the established price therefor at such ticket offices plus the amount of any tax imposed under paragraph (1), a tax equivalent to 5 per centum of the amount of such excess; and if sold for more than 75 cents in excess of the sum of such established price plus the amount of any tax imposed under paragraph (1), a tax equivalent to 50 per centum of the whole amount of such excess, such taxes to be returned and paid, in the manner and subject to the interest provided in section 502, by the person selling such tickets."

The only substantial change made by the amendment is the substitution of "75 cents" for "50 cents" in two places.

In support of the contention of the plaintiff that the act in question is unconstitutional, it is urged, among other things, that its provisions fixing the rates of the tax are arbitrary, capricious, and discriminatory, that the act as a whole is an attempt to regulate a private business in respect to the manner in which it can be conducted, and that its purpose is to fix and limit the price at which tickets may be sold. It is therefore argued that the act is unconstitutional.

We do not think it is necessary to discuss at any length the objection that the statutes involved are an exercise of the police power. Considered apart from its rates, it is simply an ordinary excise tax which the government had the undoubted power to impose. In discussing its validity, it should be kept in mind that its constitutionality is challenged solely on the basis of the rates which it fixed. We will therefore take up the specific rates used in the statute attacked herein, and consider whether the use of these rates made the tax invalid.

Charles H. Le Fevre and Howard S. Le Roy, both of Washington, D. C., for plaintiff.

George H. Foster, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Ottamar Hamele, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WHALEY, WILLIAMS, LITTLETON, and GREEN, Judges.

GREEN, Judge.

The plaintiff in this case paid $167,606.22 as taxes on broker's sales of admission tickets

■ In this connection, we find that one of the chief objections to the tax is based upon the fact that, under its provisions, the excess in price of the tickets when sold over the established price is taxed only 5 per cent. when such excess does not exceed 75 cents, but, if so sold that the excess exceeds 75 cents, then a tax of 50 per cent. of the excess is imposed. Plaintiff particularly relies on the fact that the broker cannot profitably charge more than a certain amount of excess, unless he finds customers who are willing to pay a sufficiently high price for tickets to return a greater profit than would be received if the ticket was sold at a price not exceeding the figure at which the rate of tax was made higher. So far as the question of profit is concerned, it is obvious that within certain limits a tax on tickets sold at a price exceeding 75 cents (over and above the box office price) would be so much greater than the tax which would have been imposed if the ticket had been sold for a price not exceeding 75 cents, that when, in each case, the tax was deducted, it would be found that more profit was realized if the ticket was sold at a lower price. It is therefore contended on behalf of the plaintiff that the effect of the tax is to prohibit sales of tickets within a certain zone of prices. In an economic way, the conclusion is well drawn, for it is clear that no broker would sell tickets at a price higher than 75 cents above the established price unless he could thereby realize a greater profit than he would at selling for less than that figure. But as an actual fact, the broker was not prohibited from so selling, and the mere fact that a tax is so imposed that its economic effects are to restrict business within certain lines, or even to put certain persons out of business, is not sufficient to make the act imposing it unconstitutional. This we think may be shown to be a rule which is uniformly followed in imposing taxes, and which is supported by the decisions of the Supreme Court.

The state of Iowa, for example, imposes a tax of $500 per annum upon every dealer of cigarettes. The tax is absolute and flat, and makes no difference or allowance on account of the amount of business or the profit which may be received or whether there is in fact a loss. The economic effect of this tax when it was imposed was necessarily to force the small dealers, some of whom did not sell that amount of cigarettes in a year, to go out of business, for it is plain that no dealer could afford to sell cigarettes unless he received in profits a sum considerably larger than the tax. Although the tax created a situation under which there was a zone in which no one could profitably carry on the business of selling cigarettes, it never has been contended, and we do not think it ever will be contended, that the statute is unconstitutional or that a similar statute enacted by the federal government would be unconstitutional.

The taxes that are subject to such objections as can be made against the Iowa tax on cigarettes are so numerous and well known that it is not necessary to list them. The courts have uniformly upheld such taxes when this was the only objection, and have considered them entirely within the constitutional powers of the legislative bodies which enacted them.

■ It is urged also that the tax is discriminatory. This objection is often made against a tax as a ground for holding it unconstitutional, but all taxes are discriminatory in the sense that the word is used in argument. Economists are agreed that there never was a tax that did not sometimes work out unequally and unfairly as between the different taxpayers, and most taxes often have that effect. In many instances the taxes are not assessed in the same proportion that is used under other conditions. But the mere fact that in certain cases a tax works unfairly or even oppressively is not sufficient to render it unconstitutional. In Metropolis Theater Co. v. Chicago, 228 U. S. 61, 33 S. Ct. 441, 443, 57 L. Ed. 730, the Supreme Court said: *"To be able to find fault with a law is not to demonstrate its invalidity.* It may seem unjust and oppressive, yet be free from judicial interference. *The problems of government are practical ones and may justify, if they do not require, rough accommodations,*—illogical, it may be, and unscientific. But even such criticism should not be hastily expressed. What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to our judicial review. It is only its palpably arbitrary exercises which can be declared void under the 14th Amendment; and such judgment cannot be pronounced of the ordinance in controversy. Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350."* (Italics ours.)

■ It is also said that the tax is arbitrary and capricious. In the sense in which these words are often used, many of the oldest taxes and those most firmly established in the revenue system are subject to the objection now being considered. In a large number of excise taxes, an arbitrary figure is used in computing the tax, for which no reason can be given than that in the judgment of the

legislative body enacting the law it was the one best suited for the combined purpose of obtaining the revenue and applying the tax in the manner least harmful to the public. It is said in argument that a tax cannot be imposed on red-headed men, leaving all others exempt from the same tax. It must be admitted that a mere difference in the color of the hair will not prevent taxpayers from standing on an equal basis and being entitled to equal taxation, but surrounding circumstances may make color in some instances a proper basis for taxation. It will be noted that in In re Kollock, 165 U. S. 526, 17 S. Ct. 444, 41 L. Ed. 813, the Supreme Court sustained a statute which levied a tax of two cents a pound on yellow oleomargarine, but left uncolored oleomargarine exempt, and provided for regulations which would cause the colored article to be identified when it was put upon the market. It seemed to be conceded in the case that one purpose of the act was to prevent the deception of purchasers who might buy the colored oleomargarine for butter. But the court said the act was on its face an act for the purpose of producing revenue, and the court could not assume that its primary purpose was something else, and it held the discrimination between colored and uncolored oleomargarine to be one which Congress was authorized to make, and sustained the act. In the case at bar, the same rule would apply. The large amount of taxes sought to be recovered in this case show that the tax would produce a very considerable revenue, and it cannot be assumed that its primary purpose was not to bring money into the Treasury, but to regulate business practices.

It will be observed in the Kollock Case, supra, that more revenue would have been raised if both the white and yellow oleomargarine had been taxed, but this is no objection to a tax. In a large number of instances where classifications are made in imposts, the revenue would be largely increased by abolishing classifications, making classifications in some other manner, or not making any exemptions; but this does not make the classification invalid. The question is not whether it would produce more or less revenue, but whether Congress had the right to make the classification in the first instance. If it had the right to make the classification, the manner of levying the tax and exemptions made thereto are wholly, as we think, for the Legislature to determine. In McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 779, 49 L. Ed. 78, 1 Ann. Cas. 561, the Supreme Court passed upon the validity of the Oleomargarine Act of 1886, as amended, which imposed

a tax of one quarter of one cent a pound on oleomargarine not artificially colored yellow, and yet levied a tax of 10 cents a pound if so colored. The statute in question would seem to be subject to all of the objections that are made in the instant case. It will be observed that the tax on colored oleomargarine was forty times that imposed on the uncolored article, and the taxpayer pleaded, in substance, as a part of his answer to the government's suit for the tax, that the impost was so heavy that if enforced it would entirely prevent any one from doing business in the manufacture of colored oleomargarine; that this was the real purpose of the act and not to raise revenue; that the discrimination was purely arbitrary; and the whole act a species of police regulations not within the power of Congress. But the Supreme Court said: " * * * that even although it be true that the effect of the tax in question is to repress the manufacture of artificially colored oleomargarine, it cannot be said that such repression destroys rights which no free government could destroy, and, therefore, no ground exists to sustain the proposition that the judiciary may invoke an implied prohibition, upon the theory that to do so is essential to save such rights from destruction."

The plaintiff in the case at bar concedes, as must be conceded, that Congress had the right to make the tax higher where the profit exceeded a certain amount. Necessarily it follows, as we think, that plaintiff's case must stand or fall upon the proposition that if the tax may be considered too high as compared with a tax levied under circumstances somewhat but not entirely similar, then the impost is invalid. This point was disposed of by the Supreme Court in the McCray Case, supra, in the following language: "The proposition that where a tax is imposed which is within the grant of powers, and which does not conflict with any express constitutional limitation, the courts may hold the tax to be void because it is deemed that the tax is too high, is absolutely disposed of by the opinions in the cases hitherto cited, and which expressly hold, to repeat again the language of one of the cases (Spencer v. Merchant [125 U. S. 345, 8 S. Ct. 921, 31 L. Ed. 763]) that 'The judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected.' "

A tax may be laid upon the privilege of engaging in the real estate business without

levying one on the privilege of engaging in the practice of law; or it can be levied upon the privilege of engaging in the practice of law without levying it against those who are engaged in the practice of medicine. All these occupations are perfectly legitimate, all are beneficial to the community if properly exercised, but no reason can be given as to why one should be taxed and the others left exempt, except that Congress has so decreed. Indeed, occupation taxes generally are in one sense arbitrary, capricious, and discriminatory in the selection of the persons taxed, and in the unfairness of the levies which are made under them. An occupation tax of a few hundred dollars per annum would prevent many a beginner from ever getting started in many businesses and professions. A tax of $500 per annum assessed against real estate brokers might put the small dealer out of business entirely, and, in any event, would appropriate a very large proportion of his profits, while it would be a mere bagatelle to a concern whose profits were $100,000 or more a year. It should be noted that occupation taxes are usually fixed at amounts which are purely arbitrary.

Modern economists have assailed the direct tax on real property as levied by the states as unfair, unjust, and discriminatory. In most states the fact that the title holder of a parcel of land has executed a mortgage, or some equivalent instrument, conveying under certain conditions the property to secure an indebtedness, so that in fact he has but a small interest therein, does not prevent his being assessed for the whole value thereof, even if the real fact is that he has but a small interest in the property. In a case of this kind, where the tax was attacked as being discriminatory and not affording the taxpayer the equal protection of the laws, the tax was nevertheless held to be constitutional. See Paddell v. City of New York, 211 U. S. 446, 29 S. Ct. 139, 140, 53 L. Ed. 275, 15 Ann. Cas. 187, in which the court said: " * * * You cannot carry a constitution out with mathematical nicety to logical extremes." It might be said in this connection that the discrimination in the case above mentioned is only one of the many objections that are being made against the tax on real property, but the laws that impose it have been so long on our statute books that no one would now think of attacking them as unconstitutional.

Counsel for plaintiff say in argument that, if the rates of the tax in the instant case had been made progressive in the manner used in the federal tax upon excess profits, there would be no objection thereto. The illustration cannot be said to be apt. We have already noted that all taxes have a degree of discrimination and unfairness as between different taxpayers and discriminate as between them, but the excess profits tax is one that nearly always worked unfairly and in a discriminating manner as between taxpayers engaged in exactly the same kind of business and making the same percentage of profits upon the cost of the articles or goods produced and sold. This took place because the tax was not computed by using the percentage of profits made upon cost, but upon the relation which the profits bore to the amount of capital invested. The result was that two concerns engaged in the same business, making or producing the same product, and having the same percentage of profit upon cost, would pay altogether different rates; and often the concern that charged the public a lower rate of profit, and sold its goods to the public at a more reasonable price, would pay a higher tax. This was because one concern was moderately and reasonably capitalized, while the other, by reason of having bought up and united with other concerns at an inflated valuation, was highly capitalized, and the tax was estimated by the relation of the profits to the amount of capital. This was one of the reasons given for the repeal of the excess profits tax at the debates at the time when such action was being considered by Congress, although perhaps not the most important one. It should also be said that there was another feature of the tax that made it seem in one sense extremely arbitrary.

These illustrations show that inequalities in taxation as between the individuals subject to a tax, even though they may be in the ordinary sense of the words, arbitrary, unfair, unjust, and discriminatory, do not necessarily render the tax invalid, for all taxes are subject to this objection to some extent, and many of them in a high degree. Most of these discriminations arise from the fact that it is impossible to enact a taxing statute which will adjust itself to the infinite variations in the conditions of the different individuals upon which it is imposed. Others arise from the fact that the legislative body has considered other matters besides those that relate purely to the amount of revenue to be raised by the tax, and this brings us to another objection made to the tax based upon what plaintiff claims was the intent and purpose in imposing it.

■ It is a common but, as we think, erroneous opinion in some quarters that the legisla-

tive body enacting a taxing statute cannot with propriety take into consideration any other matters ·but the revenue sought to be obtained, and that if it has other purposes besides raising revenue in imposing the tax, or in prescribing a particular manner in which it shall be levied, the tax is invalid. When enacting a statute, it is not only the right but the duty of a legislative body in such cases to take into consideration the effect of the tax in an economic way on the people as a whole, and the beneficial or injurious effects as the case may be which will result from the manner in which the tax is levied. If this were not done, the result might be highly injurious to the public generally, and result in a condition of affairs which would arouse so much protest and objection that our institutions would be endangered. In Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232, 237, 10 S. Ct. 533, 535, 33 L. Ed. 892, it was said "that the fourteenth amendment was not intended to compel the states to adopt an iron rule of equal taxation," and also that such a construction "would render nugatory those discriminations which the best interests of society require * * * and which every state, in one form or another, deems it expedient to adopt." It is certain that if no attention were paid to such matters, complaints against the hardship of taxes, already so numerous, would become more strenuous than ever. The benefit or injury to society at large is often considered, and, in levying a tax on real property, all of our states exempt property used for certain purposes such as that of colleges, philanthropic institutions, and religious bodies. Also in most of the states a certain proportion of personal property used or kept in connection with the home is exempt. Everything else is taxed either at its full value or a certain percentage thereof without any gradation. In this way, large amounts of property both real and personal escape taxation entirely; but it has always been held that the state may prescribe such exemptions from taxation as it sees fit. Here again it will be seen that the state may prescribe that persons having certain kinds of personal property, or a certain amount of personal property, shall not be taxed thereon, and it may also provide without any gradation that persons having a different kind of personal property shall be taxed upon all of their property, while under other provisions other persons may be taxed on none of the personal property which they own. It should be noted also that in imposing our federal income tax certain exemptions are provided, and the amount above these exemptions is subject to a graded normal tax. A person who has no income above the limits set for the normal tax pays no tax on the income he has received which is within the amount of the exemptions. But when the surtaxes are imposed, the amount of the exemption is not considered; or, to put it another way, the total amount of the income of the taxpayer forms the basis for the imposition of the surtaxes. The result is that income which is entirely exempt to one party from tax is not entirely exempt to another; but the Supreme Court in Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, brushed this objection away without discussion merely stating that there was no violation of the uniformity clause of the Constitution within its proper meaning.

When the objections to the tax are analyzed and the basis therefor ascertained, they are found to rest upon the fact that Congress, after dividing the taxpayers under the statute in controversy into two classes, namely, those who sold tickets at a certain excess above the established price and those whose sales included an excess in a lesser amount, fixed a different rate of tax for the respective classes. That Congress had a right to so classify the taxpayers we think must be conceded. It is said that the classification must bear some relation to the tax. Conceding this statement to express the true rule, and giving to it the broadest meaning of which it is capable, it will be found when the rule is applied that in this case the tax is one upon profits, and therefore a classification in accordance with the amount of the profits has a very obvious relation to the nature of the tax. If this were not the rule, our income tax could not be sustained. So far, it is clear that no constitutional principle has been violated, and the question to be decided in the case is the comparatively narrow one of whether it was beyond the power of Congress under the Constitution to impose a rate upon each of the respective classes that was disproportionate between them, considering the matter in a purely mathematical way.

It seems to be contended on behalf of plaintiff, in substance, that the taxes imposed on the class selling tickets at a price above the excess limit as prescribed by the statute should be at a rate, as compared to the tax on those who sold for less, which would not be considered by counsel as unfair or unreasonable. But it will be observed that the contention is in fact based on the mathematical proportion of the taxes on the respective classes.

Having a right to make the classification, Congress is not controlled by mathematical proportions. There is no constitutional inhibition against disregarding the mathematical proportion and grading the tax on some other considerations, which may seem to Congress much more important. Whether Congress erred in this respect is not for the courts to say. With questions that relate solely to the wisdom or policy of the laws that are enacted by that body we have nothing to do, and, as we have before stated, even though it appeared to us (and we do not mean to intimate that it does so appear) that the action of Congress was oppressive or unreasonable, this fact alone will not make such action unconstitutional.

Exactly similar provisions in statutes have been upheld by the Supreme Court. In Citizens' Telephone Co. v. Fuller, 229 U. S. 322, 33 S. Ct. 833, 836, 57 L. Ed. 1206, it appeared that the state of Michigan levied a tax on the property of telephone companies on an ad valorem basis, but provided that telephone companies whose gross receipts for the fiscal year did not exceed $500 should be exempt from taxation. It was urged that the proviso made an unjust discrimination, that the tax was levied on property in accordance with its value, and each dollar's worth should be treated alike. In other words, as the court said in the opinion, the appellant made the basis of comparison the value of the property, and contended that this was an illegal classification because it had no proper relation to the legislative purpose. The district court, on the contrary, considered the inducement of the legislation and its administrative possibilities as giving character to the classification. It will be observed in this case that those companies which were assessed paid a tax not only on property that was above the exemption, but on property which was entirely free from taxation to the companies which were made exempt by the statute. The tax was sustained by the Supreme Court, citing a number of other Supreme Court cases wherein a discrimination had been made between taxpayers upon a number of different grounds, among which might be mentioned that of Dow v. Beidelman, 125 U. S. 680, 8 S. Ct. 1028, 31 L. Ed. 841, where a classification of railroads by their length in fixing the rate of passengers' fare was sustained.

With reference to the numerous cases cited in the Citizens' Telephone Co. Case, supra, the court said: "They illustrate the power of the legislature of the state over the subjects of taxation, and the range of discrimination which may be exercised in classifying those subjects when not obviously exercised in a spirit of prejudice and favoritism. Cook v. Marshall County, 196 U. S. 261, 274, 25 S. Ct. 233, 49 L. Ed. 471, 474; Missouri v. Dockery, 191 U. S. 165, 24 S. Ct. 53, 48 L. Ed. 133, 63 L. R. A. 571. The cases decided subsequent to the decision in Bell's Gap Railroad Co. v. Pennsylvania [supra] have applied its principle to many varying instances. Granting the power of classification, we must grant government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous. Keeney v. New York, 222 U. S. 525, 536, 32 S. Ct. 105, 56 L. Ed. 299, 305, 38 L. R. A. (N. S.) 1139. The state is not bound by any rigid equality. This is the rule; its limitation is that it must not be exercised in 'clear and hostile discriminations between particular persons and classes.' See Quong Wing v. Kirkendall, 223 U. S. 59, 62, 63, 32 S. Ct. 192, 56 L. Ed. 350–352. Thus defined and thus limited, it is a vital principle, giving to government freedom to meet its exigencies, not binding its action by rigid formulas, but apportioning its burdens, and permitting it to make those *discriminations which the best interests of society require.'*" (Italics ours.)

In Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037, it appeared that an inheritance tax had been imposed which exempted estates of $500, but did not allow that exemption to larger estates. Moreover, it prescribed progressive rates rising in steps with the amount of the gift and applying to the entire gift and not merely to the excess. Under the law, a legatee of $10,000, being subject to a three per cent. tax, would receive net $9,700, whereas a legatee of $10,001, being subject to a four per cent. tax on the entire legacy, would receive net only $9,600.96. The court held the classification reasonable. Stepped taxes of this type are found in a number of state statutes, and have always been held valid.[1] In Metropolis Theater Co. v. Chicago, supra, an ordinance which laid a tax of $1,000 upon theaters whose admission was $1 or more, but only $400 upon those similarly situated, whose admission prices were less than $1 and more than 50 cents, was held valid.

The cases which have been cited above show that property may be taxable upon its value when such value is above a sum fixed in the statute, but that it is constitutional for a legislative body to provide that when the

[1] See note 5 to dissenting opinion in Louisville Gas Co. v. Coleman, 277 U. S. 32, 46, 48 S. Ct. 423, 72 L. Ed. 770.

property held or owned by an individual is below a certain sum in value it shall not be taxable at all. If it be said that these decisions have applied only to cases where the tax was not in an undue or unreasonable proportion, so that in fact it only amounted to a gradation of the tax, the answer is that the state is not compelled to levy the tax in any particular proportion, and, even though the proportion used may seem to be unreasonable, it is no reason why the statute should be declared unconstitutional. The same rule applies to gradations which are for the legislative body, in its wisdom, to determine. If it be said that the decisions cited above apply only to cases where a certain amount of the basis of the tax was exempt, the distinction on the facts is apparent; but so far as the application of the principle is concerned, it is clear that if the Legislature could make a certain amount exempt entirely it could instead levy a tax thereon which was less than that imposed on a higher amount of the taxable basis.

As we consider that Congress had the power to make the classification in question, we think it is not necessary to also find a reason therefor; but, if a reason is necessary, we think one can be found. The principle that excessive and extortionate profits may be made subject to a heavy or what might be called an excessive tax is now firmly established. The federal tax on excess profits, repealed some years ago, ran as high as eighty per cent.; a rate which at one time would have been thought confiscatory. True, it was originally imposed in a time of war, but it was maintained in time of peace, and no one thought of questioning its validity. Congress, it seems to us, might well have considered that a profit of above 75 cents on the sale of a ticket was not merely excessive but extortionate, and it had the right to take into consideration in imposing a tax thereon the injury done the community by the extortion of these excessive prices, as the circumstances of the case show that the buyer was often at the mercy of the ticket broker. If it were for us to pass on the question, we would say that we have no doubt that it was for the interests of the community in general as well as for the particular individuals who purchased the tickets and for the business of carrying on legitimate theaters that the taxes be so levied as to have a tendency to stop such practices. Our opinion, however, is immaterial except that it may afford a basis for concluding that Congress may have had a valid reason for imposing the tax in such a manner that one-half of the profits was taken when the tickets were sold above a certain amount.

We conclude therefore that the classification and the rates of the tax are not palpably arbitrary, discriminatory, or whimsical, and, unless they are, we ought not to hold the act imposing the tax unconstitutional. A discrimination was in one sense made by Congress, but the presumption is that this discrimination was one "which the best interests of society require," and we find nothing in the language of the act or the surrounding circumstances to overthrow this presumption.

In accordance with the views above expressed, the plaintiff's petition will be dismissed, and it is so ordered.