## WILLIAMS INV. CO. v. UNITED STATES.
### L—307.

Court of Claims.
April 10, 1933.

Edwin S. Mack and Frederic Sammond, both of Milwaukee, Wis., and Paul F. Myers, of Washington, D. C. (Miller, Mack & Fairchild, of Milwaukee, Wis., and Williams, Myers & Quiggle, of Washington, D. C., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (George H. Foster, of Washington, D. C., on the brief), for the United States.

Before LITTLETON, WILLIAMS, WHALEY, and GREEN, Judges.

LITTLETON, Judge.

Plaintiff was organized in October, 1922, a short time before the extra dividend of $500,000 was declared and paid by the Journal Company of which L. W. Neiman was the principal stockholder. Plaintiff received Nieman's share of the dividend of $142,000 in 1922, and it received further dividends declared and paid upon the stock of the Journal Company of $163,000 in 1923, $26,000 in 1924, $163,000 in 1925, $300,000 in 1926, and $400,000 in 1927. It also received dividends on stocks of other corporations of $1,900 in 1923, $1,920 in 1924, $26,550.25 in 1925, and $5,976 in 1926. The remainder of its income consisted of interest securities owned. Inasmuch as these dividends were received by plaintiff from domestic corporations they were not subject to tax under section 234 (a) (6) of the Revenue Acts of 1924 and 1926, 26 USCA § 986 (a) (6).

During the years 1922 to 1926, inclusive, involved in this case, L. W. Neiman, who through his ownership of all the plaintiff company's stock, which in turn owned the stock of the Journal Company, had, as reported in his income-tax returns, a net income of $26,000 for 1924, $36,000 for 1925, and $60,000 for 1926, upon which he paid a tax of $1,697.71, $2,643.38, and $5,664.30, respectively. The income of Nieman for these years, with the exception of 1926 when the plaintiff declared and paid him a dividend of $25,000, consisted almost wholly of his salary from the Journal Company.

Plaintiff had no paid employees. It paid no salaries to its officers, except in 1926, when it paid a total of $1,000 for officers' salaries. The company declared no dividends from 1922, the year of its incorporation, to 1926. In the last-mentioned year it declared a dividend of $25,000. At that time it had a surplus of $822,916.78. It declared no dividends in 1927, at the end of which year it had a surplus of $1,380,340.63. The sole business of the plaintiff was the holding of stocks and securities transferred to it by L. W. Nieman and the reinvestment of income therefrom. Nieman organized the plaintiff for this purpose and also for the purpose of accumulating funds sufficient for the purchase of the minority stockholdings of Harry J. Grant in the Journal Company. Grant became a member of the Journal Company in 1919 and in 1922 owned 20 per cent., or 400 shares, of the stock of that company. When he purchased this stock in 1919, he expected to pay for it largely from the dividends to be declared by the Journal Company. The Journal Company had been prosperous and had established the policy of declaring a fixed dividend of, first, $24,000 a year to and including 1918 and thereafter $48,000 a year. The annual net earnings of the Journal Company increased very materially from 1916 forward (finding 10). Since 1919 the company had contemplated an increase in its plant facilities and in 1922 the officers of the corporation contemplated that such changes would involve an expenditure of approximately $500,000. The increase in the plant facilities was completed in 1924 at a cost considerably in excess of the previous estimate. During this period the Journal Company continued to pay its regular annual dividend of $48,000, and in 1922, at the request of Grant, it declared and paid an additional dividend of $500,000. The increased facilities were paid for from current receipts, without borrowing or additional capital.

In 1928 the Commissioner of Internal Revenue held and decided that plaintiff came within the provisions of section 220 of the Revenue Acts of 1924 and 1926 (26 USCA § 961 note), and assessed a tax of $283,387.42 upon its entire net income for the years 1924, 1925, and 1926, which, together with interest

of $50,745.38, totaling $334,132.80, was paid September 30, 1929. Claims for refund for each year were filed and rejected, and this suit was timely instituted.

Plaintiff contends that it was not formed or, availed of for the purpose of preventing the imposition of the surtax upon its stockholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, and that it did not permit its gains or profits to accumulate beyond its reasonable needs. From a consideration of the statute and the evidence of record, we are of opinion that the plaintiff was formed and availed of for the purpose of preventing the imposition of the surtax upon its stockholders by permitting its gains and profits to accumulate instead of being distributed, and have so found.

The sole business of plaintiff was the holding of stock of the Journal Company and other companies and the securities transferred to it by L. W. Nieman, who had theretofore been the majority stockholder of the Journal Company, and the reinvestment of the income received therefrom. We think the plaintiff was not only formed for the purpose of preventing the imposition of surtax upon its sole stockholder, but that it was availed of by him for that purpose. The fact that Nieman also had in mind the purpose of having plaintiff accumulate funds sufficient for the purchase of Grant's minority stockholdings in the Journal Company, should the opportunity arise, cannot prevent the application of section 220 for the reason that it has not been shown that there was any necessity for that policy of the plaintiff and for the further reason that a purpose to accumulate a fund made up in large measure of the amount of surtaxes avoided through the accumulation of dividends paid to the holding company which would otherwise have been subject to the surtax, had that been paid to Nieman, comes within the spirit of section 220, especially when such purpose is so closely coupled with the main or principal purpose of preventing the imposition of surtax upon the stockholders of the holding company. All that Nieman accomplished by having the dividends of the Journal Company and certain other corporations paid to the plaintiff, a holding company, instead of to himself, was the saving in the amount of surtax which he would otherwise have had to pay. The argument that Nieman was failing in health and vigor and that, for this reason, the plaintiff was organized to accumulate a fund sufficient for the acquisition of additional stock

in the Journal Company does not, in our opinion, prevent the application of section 220. Upon Nieman's death his stock in the plaintiff would pass to his widow, or such persons as he might designate by will, in the same manner as any moneys, properties, or securities owned by him had the dividends and interest received by the plaintiff been paid to him instead of to it. Whoever should have received Nieman's stock in the plaintiff company, had he died during the period here involved, could have used it or disposed of it in the same way as they could have used or disposed of any other money or property left by him. A mere purpose on the part of the corporation in accumulating funds is not sufficient to place the case beyond the reach of section 220 unless such purpose is supported by the needs of the business and we cannot see that the determination or establishment of such needs would be any more difficult than the determination of many other questions arising under the various revenue statutes.

It is next contended that section 220 violates the Tenth Amendment of the Constitution of the United States in that it constitutes an attempt by Congress under the guise of tax to exercise a power not delegated to the United States but one reserved to the states; that the regulation of the affairs of corporations which are chartered by states is reserved to state Legislatures; and that all discretion on declarations of dividends has been committed to boards of directors by the Wisconsin Legislature and responsibility and liability therefor have been fixed upon them.

The statute in question is strictly a revenue act and its sole purpose is to raise revenue. The amount imposed and authorized to be collected, when the circumstances are such as to make the provisions of the section applicable, is imposed and designated as a tax. If viewed as a penalty, it is but the employment of one of the effective means to collect revenues. The section was enacted as a necessary aid to the effective enforcement of the powers clearly within the power of Congress, and we think the cases of Bailey v. Drexel Furniture Co., 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432, known as the Child Labor Tax Case, and Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822, are not applicable here. See Alston v. United States, 274 U. S. 289, 47 S. Ct. 634, 71 L. Ed. 1052; Nigro v. United States, 276 U. S. 332, 48 S. Ct. 388, 72 L. Ed. 600.

It is also urged that by imposing such a high tax for failure to distribute earnings the corporations would be coerced into distribut-

ing their earnings and thus all regulation of the conduct of business, essentially a state power, is effected. We think this result does not follow from the statute, but if the effect of the law be as urged the control of the business is no greater in this case than to compel a corporation to disclose its invested capital, gross income, expense of doing business, indebtedness, and net earnings, and to make such reports public records.

It was urged in Flint v. Stone Tracy Company, 220 U. S. 107, 31 S. Ct. 342, 359, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, that such enforced disclosures, together with the making of such disclosures public records, invalidated the Corporation Tax Law of 1909 as being the exercise of control over corporations and as having no direct connection with the raising of revenue. In answering this contention, as well as one that the act taxing the corporations created by the state might destroy the right of the states to so create such corporations, the court said:

"The taxation being, as we have held, within the legitimate powers of Congress, it is for that body to determine what means are appropriate and adapted to the purposes of making the law effectual. In this connection the often-quoted declaration of Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 316, 421, 4 L. Ed. 579, 605, is appropriate: 'Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, and which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional.'

"Congress may have deemed the public inspection of such returns a means of more properly securing the fullness and accuracy thereof."

In the present case section 220 was clearly adopted by Congress to make more effectual the collection of the revenue and was in itself a revenue-producing measure.

The section does not make the accumulation of surplus an absolute test for classification, but merely a prima facie classification. It does not tax all corporations which accumulate their surplus, but classifies those as subject to the tax who make such accumulation for the purpose of preventing the imposition of the surtax on their stockholders, leaving each corporation free to establish as a fact, if such be the fact, that the accumulation was for the needs of the business. The presumption is not conclusive.

Substantially the same questions presented in this case were before the Circuit Court of Appeals for the Second Circuit in United Business Corporation of America v. Commissioner of Internal Revenue, 62 F.(2d) 754, 755, in which the court said:

"The objections to the order in this court are substantially as follows: That section 220 applies only when the accumulation is unreasonable for the corporate purposes; that it was applied retroactively, and, since it imposed a penalty, could not be constitutionally enforced before it was passed; that it is too uncertain in its terms to be valid; that it offends the Tenth Amendment. * * *

"Ordinarily it will indeed be difficult to prove the forbidden purpose, unless the accumulations are too large for the fair needs of the business. But it may not be impossible to do so, even though the profits arise out of normal business, as they did not here. The management may for example be shown to have always been sanguine, and to have withheld only small reserves, though prudence justified more. A sudden change of policy, coincident with large increases in the surtax rates, might in that situation betray a purpose to accumulate against a season more propitious for distribution. Or the officers might unguardedly disclose a scheme to avoid surtaxes, though the other evidence was not enough. A statute which stands on the footing of the participants' state of mind may need the support of presumption, indeed be practically unenforceable without it, but the test remains the state of mind itself, and the presumption does no more than make the taxpayer show his hand. Pariso v. Towse, 45 F. (2d) 962 (C. C. A. 2); Alpine Forwarding Co. v. Pennsylvania R. R. Co., 60 F.(2d) 734 (C. C. A. 2).

"Here the purpose appears to us, if not transparent, at least plain enough to leave no doubt. The company was in its origin no more than a convenience for Smith's real property holdings. While its charter allowed other activity, unless it were to buttress its financial position, it was discordant with the main design to fill it with nearly nine hundred thousand dollars of shares of stock. Smith was patently in control; when he turned over his personal holdings to exempt himself from taxation, he was using the company for that purpose, and the company, his creature, by its complaisance incurred the added tax. * * *

"The intent being plain, the only question is whether Congress expressed its will certainly enough to be enforced, and whether any other constitutional obstacle is in the way. The argument is that the standard set

is too vague for execution; that it is impossible definitely to say when the purpose of those who use the corporation to accumulate its profits is to exonerate its shareholders. Purpose is indeed not often a factor in legal transactions, though at times it is; but intent is often material, and whatever the difficulties of proof, the issue is concrete enough. Nothing is more frequent in human relations than the effort to learn what goes on in others' minds. The presumption is indeed less definite, and it is this especially that the petitioner attacks, relying upon the decisions which upset the efforts of Congress to control prices during the Great War. U. S. v. L. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045. The argument misconceives the scope of those decisions. Standards of conduct, fixed no more definitely, are common in the law; the whole of torts is pervaded by them; much of its commands are that a man must act as the occasion demands, the standard being available to all. The vice of fixing maximum prices is that it requires recourse to standards beyond ascertainment by sellers, by which therefore they cannot in practice regulate their dealings. That is not true of the reasonable needs of a business, which is immediately within the ken of the managers, the supposititious standard, though indeed objective, being as accessible as those for example of the prudent driving of a motor car, or of the diligence required in making a ship seaworthy, or of the extent of proper inquiry into the solvency of a debtor. Moreover, since the result of the presumption is at most no more than to compel the taxpayer to disclose the facts, and since the tax itself is definitely enough determined, the whole issue is irrelevant.

"A more plausible objection is that the tax imposed on the company bears no relation to the surtaxes on the shareholders. This was not true before 1921, until when the shareholders were themselves taxed as though members of a personal service company. Doubts apparently arose as to the validity of taxing income which the taxpayers had never received, and in 1921 it was thought safer to tax the company itself in an amount not based upon that lost. We can see no objection. While the forbidden purpose is of those who use the company, that purpose may be imputed to the company itself, since they cannot use it unless they are in control, and it can have no other than an imputed purpose anyway. Nor does this trench upon the reserved powers of the states; companies may accumulate what profits they please so long as they do not do so to defeat the fiscal policies of the United States. Their business, whose regulation is wholly for the states, does not include the manipulation of dividends to avoid taxes; by definition that has nothing to do with the normal management of their affairs. Congress in raising revenue has incidental power to defeat obstructions to that incidence of taxes which it chooses to impose."

■ It is next contended that the section deprives plaintiff of property without due process of law in violation of the Fifth Amendment to the Constitution, in that it prescribes a confiscatory penalty for refraining from doing that which there is no obligation to do and which the Congress is not empowered to compel; and also violates the said amendment in that it imposes a penal burden dependent upon a standard which is vague, indefinite, and uncertain; and that it imposes a tax or penalty resting upon no reasonable classification, having no relation in amounts or burden to the alleged purpose; and which is arbitrary and capricious.

Most of what has been stated above, particularly the decision in the case of United Business Corporation of America v. Commissioner, supra, applies to this phase of the case. The due process clause of the Fifth Amendment is a regulatory provision as to the manner or mode of the exercise of the other powers conferred by the Constitution. It cannot be invoked to prohibit the exercise of those powers. In Brushaber v. Union Pacific Railroad Company, 240 U. S. 1, 24, 36 S. Ct. 236, 244, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, the court said:

"So far as the due process clause of the 5th Amendment is relied upon, it suffices to say that there is no basis for such reliance since it is equally well settled that such clause is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words, that the Constitution does not conflict with itself by conferring upon the one hand, a taxing power, and taking the same power away, on the other, by the limitations of the due process clause. Treat v. White, 181 U. S. 264, 21 S. Ct. 611, 45 L. Ed. 853; Patton v. Brady, 184 U. S. 608, 22 S. Ct. 493, 46 L. Ed. 713; McCray v. United States, 195 U. S. 27, 61, 24 S. Ct. 769, 49 L. Ed. 78, 97, 1 Ann. Cas. 561; Flint v. Stone Tracy Co., 220 U. S. 107, 158, 31 S. Ct. 342, 55 L. Ed. 389, 416, Ann. Cas. 1912B, 1312; Billings v. United States, 232 U. S. 261, 282, 34 S. Ct. 421, 58 L. Ed. 596, 605. And no change in the situation here would arise even if it be conceded, as we think it must be, that this doctrine would have no application in a case where, al-

though there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation but a confiscation of property; that is, a taking of the same in violation of the 5th Amendment; or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion."

It is true that it has been held that a taxing act may be so unreasonable and arbitrary as to violate the due process clause of the Fifth Amendment, Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645, but in both of these cases the unreasonableness did not lie in the lack of equality in the treatment of those clearly within the classification. The invalidity in those cases arose because of the inclusion of the cases based on events which had transpired before the enactments when there could have been no thought of taxation to evade.

The retroactive feature of the act which undertook to reach property which had completely passed beyond the power and control of the donor before the act was passed was regarded as so palpably arbitrary and unreasonable as to offend against the due process clause of the Fifth Amendment. The ground upon which the act before the court in those cases was held invalid does not apply here.

In the enactment of section 220 Congress has not, as contended by the plaintiff, commanded that corporations distribute to their stockholders all gains in excess of their reasonable needs. There is no command, and hence no penalty for failure to comply. The section classifies such corporations as accumulate unreasonably their earnings for the purpose of preventing the imposition of the surtax on their stockholdings, and, having so classified, a tax is levied. The fact that the tax may bear more heavily upon the corporation than it would upon the stockholders is a matter with which the court has no concern. The fact that it is possible for corporations to conduct their business so as to fall without the classification and avoid the 50 per centum tax imposition does not convert the tax into a penalty for failure so to do. This seems to be the logic of the decisions of the Supreme Court in the oleomargarine cases. Section 220 deals with income as such, and, since the purpose of its enactment was to aid in the collection of revenue, it need not be tested by the rules of exactness usually required in the imposition of penalties, nor does the fact that the tax of 50 per centum is greatly in excess of the tax which would be payable by the stockholders make the classification unreasonable.

To hold section 220 to be beyond the power of Congress would be almost the equivalent of holding that Congress is impotent to prevent evasions of its tax laws. Without section 220, or its equivalent, potential taxpayers could by the mere forming of a corporation evade all surtaxes.

■ It is finally contended that section 220 deprives plaintiff of property without due process of law in violation of the Fifth Amendment, in that it imposes a purported tax upon the income of obligations of the United States in derogation and in violation of contracts between plaintiff and the government, and in contravention of the freedom of such income from taxation which is pledged by the government's good faith and credit.

During each of the taxable years in question plaintiff received $13,090 as interest upon certain first, second, third, and fourth Liberty loan bonds, and these amounts were included by the defendant in the income of plaintiff upon which the tax imposed by section 220 was assessed and collected. Section 220 requires that such interest shall be included in the net income subject to tax if such income "would be subject to tax in whole or in part in the hands of an individual owner." The income from the government obligations involved in this case was subject to estate and inheritance tax, surtaxes, and excess and war-profits taxes. Congress has not attempted to define the nature of the tax imposed by section 220 and the statute does not require that the tax be defined to be other than a surtax. The tax imposed by the section partakes of the attributes of a surtax or excess-profits tax more than any other, and section 220 was intended as an auxiliary to that portion of the income-tax provisions relating to surtax. It was designed to prevent the evasion of surtaxes by stockholders and we think it avails nothing to show that the tax is 50 per cent. of the net income without regard to the amount of unreasonable accumulation. The interest received by plaintiff from the government bonds was not subject to the normal income tax imposed by sections 230 of the Revenue Acts of 1924 and 1926 (26 USCA § 981 note), and it has not been so taxed. As shown in the findings, the interest of $13,090 received by plaintiff each year from the government bonds was reported in its returns of

income; but no tax was paid thereon, inasmuch as such interest was exempt from the tax imposed by section 230. "It will be understood that Congress has very ample authority to adjust its income taxes according to its discretion, within the bounds of geographical uniformity. Courts have no authority to pass upon the propriety of its measures; and we deal with the present criticism only for the purpose of refuting the contention, strongly urged, that the tax is so wholly arbitrary as to amount to confiscation." La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 532, 65 L. Ed. 998.

■ The courts cannot limit the discretion of Congress in the exercise of its constitutional power to levy taxes because the court might deem the tax oppressive. Veazie Bank v. Fenno, 8 Wall. 533, 19 L. Ed. 482; McCray v. United States, 195 U. S. 27, 24 S. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561.

The petition must be dismissed. It is so ordered.

WILLIAMS, J., concurs.

WHALEY, J., concurs in the result.

BOOTH, C. J., took no part in the decision of this case on account of illness.

GREEN, Judge.

I concur in all that is contained in the foregoing opinion, but the importance of the case may justify or at least excuse some further observations.

A writer in the National Income Tax Magazine for April, 1927, estimated a loss to the government of $168,000,000 during the years 1922 to 1925 through corporations that were used to accumulate a surplus and prevent the application of the surtaxes. How much altogether has been lost from income taxes due the government through this method of evasion is difficult to estimate, but it must be very many times this amount. The fact, however, that the provision of the statute[1] now under discussion was a part of our tax laws has undoubtedly served as a deterrent to many that might have been otherwise disposed to use this method of evasion. On the other hand, if the contention made on the part of the plaintiff should be sustained, the plan used by the plaintiff affords an easy method of avoiding the surtax rates in the

higher brackets. The situation in this respect would be such that the surtax would only be paid in the high brackets by those who did not wish to avoid their moral obligations to the government while those who saw fit to use a holding company for the purpose of evading taxation would be rewarded by being made exempt. Such a situation, it appears to me, would be not only extremely unjust and inequitable but intolerable as a method of taxation and the government in prosperous years would lose enormously in revenues. I think it clear that the Constitution in giving the authority to levy a tax on incomes does not so restrict the government as to make such a tax a failure. When the amendment authorizing the imposition of a tax on incomes became a part of the Constitution,[2] by clear implication and under all rules of constitutional law the government was authorized not only to "lay and collect taxes on incomes" but to enact such further statutory provisions as would enable the government to exercise the power so conferred. The majority opinion shows by quotation from Flint v. Stone Tracy Company, 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, that the system of taxation being within the power of Congress, it is for that body to determine what means are appropriate and adapted to the purposes of making the law effectual.

The argument that the statute in question is unconstitutional appears to be based principally upon the provision that certain facts are made "prima facie evidence of a purpose to escape the surtax." Counsel appear to misread or at least put a most singular interpretation upon this provision. They treat it as if it were the same in effect as though the presumption was a conclusive one which the plaintiff was not permitted to refute or rebut by evidence, and this, as I view it, entirely destroys the effect of their argument.

It seems not to have been noticed that the provision above quoted and the paragraph containing it might have been left out of the statute without making any real change in its effect except possibly in its enforcement. It is entirely unnecessary, for the Commissioner might, if he saw fit, without this provision in the statute use the facts stated therein as the basis of making an assessment against the plaintiff or any other matter which came into his mind and which appeared to him to be sufficient for making an assessment against the plaintiff on the ground that its purpose was to escape the surtax. But such an assess-

---

[1] Section 220 of the Revenue Acts of 1924 and 1926. This section is continued under another number in subsequent acts.

[2] Article XVI.

ment either with or without the provision in controversy would not conclude the plaintiff. It had the right to present either before the Commissioner or in any court to which it saw fit to appeal, any evidence that it could furnish to show that in fact there was no purpose to evade the surtax, and thereby overcome the presumption created by the statute. The case would then stand for a finding of fact upon what evidence was before the court bearing upon the question of whether there was an intent or purpose to evade the surtax. As it may be claimed that plaintiff did introduce some testimony on this question, it should be noted here that evidence and testimony are often very different things. Testimony is what a litigant presents to the court; evidence is the court's conclusion from this testimony. In this particular case this court, entirely disregarding the presumption, has found from all of the evidence that plaintiff's purpose was to evade the surtax.

To me it seems somewhat singular that the claim should be set up that there is a want of due process of law in such a procedure or that the statute is arbitrary and capricious in its effect. On the contrary, this presumption simply places the burden upon plaintiff, just where it is in all tax cases, to show that the tax is wrongfully assessed. This principle is not arbitrary but a very fair and proper one. No one so well knows or can ascertain all of the facts which pertain in any way to the question of whether the tax is properly assessed as the taxpayer, and it is particularly so in this case where the question of purpose is concerned. It is true that mere testimony of the party most concerned that he had no purpose or intent to evade the tax might not weigh very heavily with the court for the reason that the circumstances of the case might, as we have found, directly show the contrary. But everything that could possibly exist in the circumstances in favor of the plaintiff, it was at liberty to present to the court. In other words in the case at bar plaintiff not only had every opportunity but every advantage in presenting its case to the court, and I cannot understand how a statute that concedes so much to a litigant can properly be held not to grant "due process of law." The cases cited by counsel not only have no application but to my mind are not at all analogous to the one now before the court. Schlesinger v. Wisconsin, 270 U. S. 230, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224, created an absolute presumption of fact which those who succeeded to the decedent were not permitted to rebut. There were also other matters in that case which distinguish

it from the case at bar but it is not necessary, as I think, to call attention to them because the basic principle of the Wisconsin statute is so utterly different from the one which we are now considering that it is not necessary to go further.

The case of Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 361, 76 L. Ed. 772, instead of being in favor of the contention of counsel for plaintiff is against it. It needs but a casual reading of the case last cited to show that the basic principle laid down in the majority opinion is "that a statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment." It is only fair to conclude that when the statute affords to the taxpayer every opportunity to controvert the facts upon which the tax must be based, there is no constitutional objection on the ground that it does not afford due process of law.

Counsel for plaintiff, as it appears to me, carry this error in construing and interpreting the statute to an extreme when they contend that the standard by which the tax is fixed is contained in the provision of subdivision (b) of section 220 which has already been quoted. On the contrary, there is but one standard by which the tax is fixed which is contained in subdivision (a) of the same section. In order to justify the imposition of the tax the statute requires that it must appear that a corporation "is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed." The provisions of subdivision (b) making the fact that the corporation is a mere holding or investment company or that the gains or profits are permitted to accumulate beyond the reasonable needs of business prima facie evidence are used simply for the purposes stated in the preceding paragraphs; that is, for the purpose of having the tax assessed, or, as is said in the majority opinion, for the purpose of making "the taxpayer show his hand." The real test of the tax is contained in subdivision (a) and in order to apply the tax the court must find, as this court has, that there was a purpose of preventing the imposition of the surtax in the manner provided by subdivision (a).

While I consider the argument on behalf of plaintiff entirely misapplied, it ought perhaps to be said in this connection that there

is no difficulty in determining what a mere holding or investment company is, and the courts are every day called upon to determine as a question of fact whether a certain course of conduct is reasonable or not. This occurs not only in cases of negligence where a defendant may be mulcted in heavy damages because he has shown a want of such care "as a reasonably prudent man would use under like circumstances," but he may be even liable criminally for gross negligence and this notwithstanding the fact that it might be difficult to find two persons who were exactly agreed upon what was reasonable and what was not, or what was reckless and wanton under certain circumstances and what was not. These matters as well as the question of purpose which arises under subdivision (a) are not questions which may be defined with exactness or which present problems which may be solved by a mathematical computation. Nevertheless the courts, as we have stated above, are every day making findings of fact in relation thereto which determine these matters and basing judgments upon the findings thus made.

Another objection made to the statute is that the tax prescribed is not based upon the rate which would have been paid by the stockholders if the corporation had not been formed nor has it any relation thereto. If this fact is sufficient to make the statute unconstitutional, then the general corporation tax is also unconstitutional because it has not the slightest relation to the tax which the stockholders might pay if the corporation had not been formed. In the case of many large corporations there are often a very considerable number of stockholders who pay no income tax whatever. Under the statute in question the tax is based upon the purpose of the stockholders as carried out through the corporation. In other words, a corporation makes itself the instrument of the stockholders in effectuating the illegal purpose and therefore becomes equally responsible. In any event, Congress has the undoubted right to classify corporations and impose a tax upon the class so obtained regardless of the tax which would be paid by the stockholders. Thus corporations have been classified according to the profits which they made and an additional and very heavy tax imposed accordingly by what was known as the excess-profits tax, now repealed. A class has even been fixed by the number of different establishments operated by a corporation and a graded tax imposed accordingly. Surely Congress may classify the corporations which are used for a legitimate purpose and those

which are formed or availed of for an illegitimate purpose and may, if it sees fit, impose a tax on those which are constructed and used for the purpose of preventing the government from obtaining the revenues to which it is entitled. Nor does the statute require that the business should be conducted in any particular way. It is not the manner in which the business is conducted which causes the imposition of the tax but the purpose for which the corporation is formed or for which it is used. No matter how the business is conducted, unless this purpose is shown, the tax cannot be imposed.

It is also contended that what has herein been termed a tax is in fact a penalty and therefore unconstitutional. Assuming for the purposes of the argument only that it is a penalty, it would appear to be immaterial in the case now under consideration for the reason that Congress has power to impose a penalty for evading taxes or assisting or furthering the evasion thereof. Penalties are imposed for a violation of a statute or regulation. In the Child Labor Case, 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432, so much relied upon by counsel for plaintiff, it is said that where the sovereign enacting the law has the power to impose both tax and penalty the difference between revenue production and mere regulation may be immaterial. But it appears to me the contention of counsel for plaintiff that the tax under consideration is in fact merely a penalty has no valid support in the record. The argument is based largely on the fact that the words "penal" and "penalized" have been used in congressional reports with reference to the tax in question. Counsel overlook the fact that in speaking colloquially the words "penal" and "penalized" are often applied to cases where a payment is required or action taken which will cause a loss. Thus we find from the dictionary that a race horse which is made subject to a handicap is said to be penalized, and following the common method of expression a manufacturer of colored oleomargarine might be said to be penalized when he was required to pay a tax of ten times as much as he would if no coloring matter had been used. It has already been shown that the tax is not upon the method of doing business but upon acts done with a certain purpose, and even if it should appear that the economic effect would be such that no person would find it profitable to act in such a way as to cause the imposition of the tax this does not transform the tax into a penalty. If this were the rule, obviously the oleomargarine tax could not be sustained as it was by the Supreme Court.

So also in the case of Couthoui v. United States, 54 F.(2d) 158, 162, 73 Ct. Cl. 363 (certiorari denied 285 U. S. 548, 52 S. Ct. 396, 76 L. Ed. 939), it appeared that the effect of the tax was practically to prohibit sales of tickets by ticket brokers upon a certain margin of profits but the tax was nevertheless held to be a valid one.

It should also be noted that the statement on the part of counsel that no appreciable amount of revenue has been raised or could be expected to be raised by the tax is a mistake. The Treasury records show that many millions of dollars have been collected under it; and if the tax is sustained, many millions more will be collected. Nor does the fact, if it be a fact, that Congress may have had some other purpose in imposing the tax in addition to that of collecting revenue render the tax invalid. This is shown in the opinion in the Couthoui Case, supra, in which we said:

"It is a common but, as we think, erroneous opinion in some quarters that the legislative body enacting a taxing statute. cannot with propriety take into consideration any other matters but the revenue sought to be obtained, and that if it has other purposes besides raising revenue in imposing the tax, or in prescribing a particular manner in which it shall be levied, the tax is invalid."

Like the statute in the oleomargarine cases, the act before the court is "on its face" an act for levying taxes. It may serve the very useful purpose of preventing the government from being deprived of revenue which it should justly receive, and it may be that Congress had this purpose in mind in addition to the purpose of raising revenue, but this would not make the act invalid. As was shown in the decision in the Couthoui Case, supra, Congress in passing a taxing act may well take into account considerations as to whether the act will be beneficial in other respects as well as useful in raising needed revenue. The principle that should control the determination of this question is well stated as follows in McCray v. United States, 195 U. S. 27, 64, 24 S. Ct. 769, 780, 49 L. Ed. 78, 1 Ann. Cas. 561.

It is only "where it was plain to the judicial mind that the power had been called into play, not for revenue, but solely for the purpose of destroying rights which could not be rightfully destroyed consistently with the principles of freedom and justice upon which the Constitution rests, that it would be the duty of the courts to say that such an arbitrary act was not merely an abuse of a dele-gated power, but was the exercise of an authority not conferred."

It seems almost unnecessary to add that the plaintiff had no constitutional right to use its corporate powers for the purpose of defeating taxation and that the tax in question deprived neither the corporation nor its stockholders of any right.

There is another feature of the case which should be considered. It is well settled that where a corporation is formed simply for the purpose of being the agent or instrumentality of another corporation or some individual the courts will look through the forms to the realities of the case "as if the corporate agency did not exist and will deal with them as the justice of the case may require." See United States v. Reading Co., 253 U. S. 26, 62, 40 S. Ct. 425, 434, 64 L. Ed. 760. In the case of Acme Operating Co. v. United States, 74 Ct. Cl. 82, this court held that a certain corporation was merely certain individuals masquerading under its name.[3] So in the case now before the court, the plaintiff corporation is merely a mask behind which the sole beneficial stockholder, L. W. Nieman, seeks to hide from income taxes. The corporation at every turn must necessarily act in accordance with the direction of Nieman while under his control and in every way is subject to the same rules of law.

What has been said above also answers other objections and if the basis thereof is correct the provisions of the statute under consideration are neither arbitrary nor oppressive but just and proper.

The contention that the statute under consideration imposes a tax upon income from bonds in violation of the terms of the contract of the government with the bondholder is also based on a mistaken construction of its provisions. Section 220, by its express terms, imposes the tax only on such income as "would be subject to tax in whole or in part in the hands of an individual owner." As shown in the majority opinion, the income from the bonds involved in the case was subject to surtaxes, and a surtax is merely an additional or extra tax; that is something above or in addition to the normal tax. It is so defined in the dictionary and the law books. See 33 C. J., p. 301, § 71. Congress has changed it from time to time and can make it very low or very high as it sees fit. At present, in the upper brackets of the individual income tax, the surtax is much higher than the rate imposed by section 220. The statute

---

[3] This case was reversed on another point but certiorari was denied on this matter.

makes the tax subject to the rule that applies to individual incomes, and I think it clear that no constitutional question can arise on this point. On the contrary, it is merely a question of whether the tax has been computed correctly. It is plain from a reading of the statute that the amount of the tax and the income upon which it is levied depend upon other provisions of the income tax laws, the validity of which never has been in doubt. So far as this point is concerned, the question is not a constitutional one but merely a matter of the correct computation of the taxes. If the Commissioner has erroneously applied these taxes, his error would have nothing to do with the validity of section 220; but as the plaintiff does not contend there was any error in this respect, it can be safely assumed there was none.

For the reasons stated in the majority opinion and those stated above, I concur in the judgment dismissing the plaintiff's petition.