**MOTOR FUEL CARRIERS, INC.**
v.
**The UNITED STATES.**
No. 43–68.

United States Court of Claims.
Jan. 23, 1970.

---

William R. Frazier, Jacksonville, Fla., attorney of record, for plaintiff.

Frances M. Foltz, Washington, D. C., with whom was Asst. Atty. Gen., Johnnie M. Walters, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COL-

LINS, SKELTON, and NICHOLS, Judges.

## OPINION

DAVIS, Judge.

We have to decide, on undisputed facts submitted by joint stipulation, a narrow but prickly issue emerging from the accumulated earnings tax imposed by § 531 of the Internal Revenue Code of 1954.[1] Taxpayer, a Florida corporation, was assessed income tax deficiencies for 1958–1962, including accumulated earnings taxes. Within ten days of notice and demand by the Government, the company paid the entire amount of the tax alleged to be due, with interest from the return due date of the years in question. It then sued to recover the amount thus paid under § 531. Motor Fuel Carriers, Inc. v. United States, 202 F.Supp. 497 (N.D.Fla.1962), remanded 322 F.2d 576 (C.A.5 1963), on remand 244 F.Supp. 380 (N.D.Fla.1965). Judgment for the Government for the entire amount was finally rendered in the spring of 1965. Thereafter, plaintiff made claim with the District Director of Internal Revenue for return of the interest paid on the accumulated earnings tax, $34,381.09. The theory was that this tax is a penalty or additional tax, interest upon which must be assessed under § 6601(f) (3),[2] prescribing that interest on assessable penalties or additions to the tax begins ten days after notice and demand. Upon failure of the District Director to allow the claim,[3]

---

1. "In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of—
   (1) 27½ percent of the accumulated taxable income not in excess of $100,000, plus
   (2) 38½ percent of the accumulated taxable income in excess of $100,000."

2. "Except as otherwise provided in this title—
   *    *    *    *    *

Interest shall be imposed under subsection (a) in respect of any assessable penalty, additional amount, or addition to the tax only if such assessable penalty, additional amount, or addition to the tax is not paid within 10 days from the date of notice and demand therefor, and in such case interest shall be imposed only for the period from the date of the notice and demand, to the date of payment."

3. The Government's position is that interest is controlled by § 6601(a) of the 1954 Code which, according to the Government, puts the interest back to the

plaintiff filed suit for refund in this court.

The case presents two related questions: (1) Is the accumulated earnings tax an "assessable penalty, additional amount, or addition to the tax" within § 6601(f) (3); and (2) if the interest on the § 531 tax is not covered by § 6601(f) (3), what, for the purposes of § 6601(a), is the "last date prescribed for payment"? Since we find for the taxpayer on alternative grounds, we discuss both of these issues in the matrix of the accumulated earnings tax.

■ *The accumulated earnings tax:* The history of the accumulated earnings tax reflects a congressional purpose to minimize revenue losses caused by non-distribution of gains and profits by corporations attempting to shield their shareholders from the individual income tax. See United States v. Donruss Co., 393 U.S. 297, 303, 307, 89 S.Ct. 501, 21 L.Ed.2d 495 (1969); Helvering v. National Grocery Co., 304 U.S. 282, 58 S. Ct. 932, 82 L.Ed. 1346 (1938); Williams Investment Co. v. United States, 3 F. Supp. 225, 239, 77 Ct.Cl. 396, 426 (1933) (concurring opinion); Casey v. Comm'r, 267 F.2d 26, 32 (C.A.2 1959) (Hand, J., concurring opinion); Estate of Goodall v. Comm'r, 391 F.2d 775, 796 (C.A.8), cert. denied, Sub. Nom. Good-All Electric Mfg. Co. v. Comm'r, 393 U.S. 829, 89 S.Ct. 96, 21 L.Ed.2d 100 (1968). To achieve that goal Congress discourages undesirable withholding by treating, to a certain extent, that as done which ought to be done. *See* Pomeroy, The Statutory Pattern, 17 W.Res.L.Rev. 704, 705 (1966). *See also* B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, 209–238 (2nd ed. 1966). In 1913, at the start of the modern federal income tax, shareholders were required to include in their returns their distributive share of the yearly corporate earnings, whether distributed or not, of those businesses "however created or organized, formed or fraudulently availed of for the purpose of preventing the imposition of such tax through the medium of permitting such gains and profits to accumulate instead of being divided or distributed * * *" Rev.Act of 1913, ch. 16, 38 Stat. 166. Later, fearing possible constitutional objections stemming from Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920), Congress relieved stockholders of personal liability under the accumulated earnings tax, and placed the levy directly upon the offending corporation, at a rate of 25% of the undistributed earnings for the year in question. This format of taxing the corporation exists today, though fairly substantial revisions have been made. *Compare* Rev.Act of 1921, ch. 136, § 220, 42 Stat. 247, *with* Int.Rev.Code of 1954, 26 U.S.C. §§ 531–537 (1964).

From the early history of the accumulated earnings tax, four factors are to be particularly noted: (1) In both the 1913 and the 1921 Acts, the tax imposed was part of an "additional tax" or "in addition to" the normal income tax (38 Stat. at 166; 42 Stat. at 247); (2) mere accumulation of gains and profits was not to be viewed as indicative of the forbidden intent to avoid individual taxes, unless the Commissioner certified that in his opinion the accumulation was unreasonable for the needs of the business (38 Stat. at 167; 42 Stat. at 248); (3) the tax imposed was to be "levied, collected, and paid for each taxable year" (Rev. Act of 1921, ch. 136, § 220, 42 Stat. 247; Rev.Act of 1913, ch. 16, 38 Stat. 166); and (4) it was to be "computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as [the normal income] tax. * * *" (Rev.Act of 1921, ch. 136, § 220, 42 Stat. 247; *cf.* Rev.Act of 1913, ch. 16, 38 Stat. 166).

dates of the returns for the various taxable years. § 6601(a) speaks in terms of interest running from "the last date prescribed for payment" of the tax. See note 10, *infra.*

In 1934, the phrase "in addition to" was deleted from the tax-imposing provision, Rev.Act of 1934, ch. 277, § 102, 48 Stat. 702, and "surtax" substituted. The prohibition on regarding the accumulation as a violation of the proscribed purpose, without certification by the Commissioner, was eliminated in 1924, Rev.Act of 1924, ch. 234, § 220, 43 Stat. 277. The Revenue Code of 1939, with minor changes, simply adopted the 1934 provisions. Int.Rev.Code of 1939, 26 U.S.C. § 102 (1952). The 1954 Code, with alterations we believe significant for this case, substantially incorporated the requirements of the 1939 Code. Int. Rev.Code of 1954, 26 U.S.C. §§ 531–537 (1964). In 1954, however, Congress reinstated the phrase "in addition to" in describing the nature of the tax. 26 U. S.C. § 531. It also added a section carefully allocating the burden of proof in § 531 cases tried before the Tax Court, so as to place that burden largely on the Internal Revenue Service. 26 U.S.C. § 534.[4]

Even though the statute has not, since 1924, explicitly required the Commissioner of Internal Revenue to make a determination that the accumulation is unreasonable, and therefore that the tax is imposable, the actual practice is, and has been, that the tax is not "self-assessing" but is levied only after and by determination of the Revenue Service. There is no provision in, or part of, Treasury Form 1120 (the return form) for reporting the amount subject to this tax; nor are there any schedules or instructions for reporting the item. It is left wholly to the Government's initiative. See Mertens, Law of Federal Income Taxation, Vol. 7, § 39.57 (Rev. ed. 1967).[5]

This procedure has not come about by happenstance, the Treasury's neglect, or the irresponsibility of corporate taxpayers. It is inherent in the nature of the tax—and was formerly recognized specifically by Congress—that a taxpayer can hardly determine for itself, with any accuracy, if the tax is due, and if so to what extent. The general standard of liability (§ 532) is the elusive one that the corporation has been, during the taxable year, "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed." The difficulty of applying this criterion is increased by the further declarations that "the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders" (§ 533), and (with respect to non-holding or non-investment company taxpayers) that account is to be taken of that part of earnings and profits "retained for the reasonable needs of the business," including "the reasonably anticipated needs of the business" (§§ 535(c), 537). These are complex and

---

4. The section authorizes the Service to send the taxpayer a notification that the proposed notice of deficiency includes an amount with respect to the accumulated earnings tax imposed by § 531. If such a notice is not sent, the burden is on the Government to prove that "all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business." If the notice is sent, the taxpayer may submit a statement of the grounds and facts on which it relies to establish that "all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business." Upon submission of that statement, the burden of proof is on the Government "with respect to the grounds set forth in such statement." In sum, the Government normally has the laboring oar once the taxpayer shifts it into the Service's hands.

5. The defendant's brief states (p. 5): "The accumulated earnings tax is one which is not, in the ordinary course of events, voluntarily shown to be due by the taxpayer-corporation when it files its annual tax return. Its determination, assessment and payment result, therefore, from the initiative of the tax collector and not, as is more usual with other income taxes, from the initiative of the taxpayer."

difficult evaluations, invoking very large elements of judgment and discretion, and with great room for difference of opinion.

■ *Section 6601(f) (3):* Section 6601(f) (3) (*supra,* note 2), headed "Interest on penalties, additional amounts, or additions to the tax", allows interest "in respect of any assessable penalty, additional amount, or addition to the tax" only if that sum is not paid within 10 days of notice and demand. Literally read, this section covers the accumulated earnings tax. That impost may or may not be a "penalty" within this section's coverage,[6] but it can easily be characterized as an "additional amount" or an "addition to the tax." As we have seen, that was how Congress expressly described it, in terms, until 1934 and, again, in the 1954 Code (see fn. 1, *supra*). In ordinary English, moreover, that is just what this tax appears to be —an addition to the regular income tax.

Even for tax legislation, the literal or on-the-face reading may turn out to be inapt, and the Government urges that

that is so here. The burden of the argument is that the history and context of § 6601(f) (3) demonstrate that, for this provision, the only "additional amount[s] or addition[s] to the tax" can be those so named and included in chapter 68 of the 1954 Code, §§ 6651–6683 ("Additions to the Tax, Additional Amounts, and Assessable Penalties").[7] It is true that, in the 1939 Code, one of the provisions then dealing with interest (§ 294(b), on delinquency interest) referred in terms to "additional amounts" or an "addition" which were related expressly to some of the items now included in chapter 68—negligence, fraud, failure to file a return.[8] Defendant says that this 1939 Code provision for delinquency interest on "additional amounts" for negligence, fraud, and failure-to-file was the basis for the 1954 Code's § 6601(f) (3), and therefore that the new provision must also be interpreted—though it does not say so in its wording—as referring only to the same items (or others now placed in chapter 68).

6. The tax is often described as a "penalty" by Congressmen, courts, and publicists alike. *See, e. g.,* H.R.Rep. No. 1337, 83rd Cong., 2nd Sess. 52 (1954) 1954–3 U.S.C.C.A.N. at 4077–4080; Casey v. Comm'r, 267 F.2d 26, 32 (C.A. 2 1959) (Hand J., concurring opinion); Corporate Tax Inv. Co. v. Comm'r, 40 BTA 1156, 1172 (1939); B. Bittker & J. Eustice, Fed'l Income Taxation of Corporations & Shareholders, 211 (2nd ed. 1966); J. Mertens, Law of Federal Income Taxation, § 39.29 (rev. ed. 1967); Pomeroy, The Statutory Pattern, 17 W.Res.L.Rev. 704, 705 (1966). However, it may be that "penalty" has, for these tax purposes, a narrower, more technical, scope (*cf.* 26 U.S.C. §§ 6671, 6681 (1964)) and that the use of "penal" or "penalty" with respect to this tax has been informal, non-technical, and colloquial. *Cf.* Williams Inv. Co. v. United States, 3 F.Supp. 225, 238–239, 77 Ct.Cl. 396, 424–426 (1933) (concurring opinion).

7. Chapter 68 includes the following as "additions to the tax and additional amounts": failure to file tax return (§ 6651), failure to file certain information returns (§ 6652), failure to pay

tax (§ 6653), failure by individual to pay estimated income tax (§ 6654), failure by corporation to pay estimated income tax (§ 6655), failure to make deposit of taxes (§ 6656), bad checks (§ 6657), and addition to tax in case of jeopardy (§ 6658).

Under "assessable penalties", chapter 68 covers, among others, the penalty for failure to collect and pay over a tax, or for attempt to evade or defeat a tax (§ 6672), for a fraudulent statement to or a failure to furnish a statement to an employee (§ 6674), failure to file certain information returns (§ 6677), and the penalties relating to equalization tax certificates and returns (§§ 6680, 6681).

8. Section 294(b) provided, in part, that delinquency interest was to be imposed upon any "deficiency, or any interest or additional amounts assessed in connection therewith *under section 292* [interest on deficiencies] or *under section 293* [additions to tax for negligence or fraud] or any addition to the tax in case of delinquency *provided for in section 291* [failure to file return * * *]" (emphasis added).

But we cannot blink away so quickly the broad and generalized phrasing Congress gave in 1954 to § 6601(f) (3). It did not do what it had done in the 1939 Code provision which defendant invokes as parent (*i. e.*, § 294(b)), and tie the new subsection to particular items referred to by section number (see note 8, *supra*) ; nor did it refer, as it could have, to an assessable penalty, additional amount, or addition to the tax *"imposed by chapter 68"*. On the contrary, the words of the new section are quite unqualified, unlinked to any other specific section or chapter, and the Government admits that the broad language covers items in chapter 68 which were not mentioned in § 294(b) of the 1939 Code. Moreover, we are given no indication from the immediate legislative history of the 1954 Code that Congress meant to confine those general words only to the particular "additional amounts" or "additions" covered by old § 294(b), or even to all the items collated in chapter 68. The parallelism to the title of chapter 68 may be suggestive of the defendant's view, but we are expressly cautioned by the Internal Revenue Code not to make too much of the location or grouping of any particular section, or of tables of contents, analyses, and descriptive matter (26 U.S.C. § 7806(b) (1964)).

Given the breadth of the phrasing of § 6601(f) (3), we think that the proper way to interpret the provision is to seek the reason why—for this subsection, in contrast to other interest provisions—interest is allowed to run only after notice and demand, and not from an earlier time. It seems plain that the answer lies in the need, in these instances, for an administrative determination by the Service. The factor common to the chapter 68 items which § 6601(f) (3) admittedly covers (see note 7, *supra*) is that a Service determination precedes the imposition of those penalties and additions. The taxpayer knows that he has to pay because the Service tells him so ; these are not items which are treated as self-assessable or which the taxpayer is expected to remit before demand is made. In other words, we infer that § 6601(f) (3) covers those "extra" payments or sanctions which the taxpayer can properly wait for the Service to determine and to invoke, and which he need not himself include in his tax return.

As we have indicated, the accumulated earnings tax falls into this class of additional payments. A taxpayer can properly file its corporate return without paying any attention to this tax; in so doing it will not make any erroneous or false statement nor will it leave its return with any omission or gap. The taxpayer can then pay all the sums shown due on this accurate and complete return and still be held liable, later, for an amount of tax under § 531, as subsequently determined by the Service. The reason is, of course, that an administrative decision is the normal precondition. The situation is the same as with the sanctions for civil fraud, negligence, under-estimation of the estimated tax, and for failure to file a timely return—all of which require administrative determination and all of which defendant admits to be governed by § 6601(f) (3).

Our understanding of the accumulated earnings tax as not self-assessing rests squarely on the consistent practice of both the Internal Revenue Service and taxpayers. But there is also a legislative foundation for this view. Although not as explicit as the earlier specific declaration (up to 1924) that liability was dependent upon the Commissioner's certification, § 534 (see note 4, *supra*) seems to us to reveal a congressional understanding that the Service, rather than the taxpayer, will initiate consideration of the accumulated earnings tax. The Service is in effect charged, under this section, with the burden of going forward, through a special notification procedure, on the crucial issue of whether the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business.

The Government stresses, in response, that this § 531 tax is part of the income tax—and has always been—and is to be

collected in the same manner. But that is an insufficient reply since the additional amounts and penalties specified in chapter 68—to which § 6601(f) (3) admittedly applies—are also regarded as part of the tax and collected as such (see 26 U.S.C. §§ 6659, 6671). Defendant says, too, that the type of additional payments included in chapter 68 differ in kind from the accumulated earnings tax—the former are sanctions for derelictions in connection with a duty under the internal revenue laws while the latter deals with "liability-generating" circumstances. This difference, if it be one, does not seem significant enough to outweigh the other factors we have mentioned. The accumulated earnings tax is obviously a sanction to induce distribution of earnings and profits to shareholders so as to increase the latter's income taxes; both classes of sanctions are therefore designed to stimulate action by taxpayers which is intimately connected with the internal revenue laws. Finally, defendant's analogy to the tax on personal holding companies (26 U.S.C. §§ 541–547) is unpersuasive; that tax is reportable on the return, is meant to be so reported, and is treated as self-assessable.

■ We hold, therefore, that § 6601(f) (3) applies and that plaintiff, having paid its accumulated earnings tax within 10 days of demand, should not have been charged interest.[9]

■ *Section 6601(a):* Even if § 6601(a) applies,[10] as the Government

contends, taxpayer is nevertheless entitled to recover. Under that section, interest accrues from the "last date prescribed for payment." § 6601(c) states that

> For purposes of this section the last date prescribed for payment of the tax shall be determined under chapter 62 [with the application of certain rules].

Chapter 62 "Time and Place for Paying Tax" §§ 6151–6166, details the time and place for payment. Since, as we have pointed out, the accumulated earnings tax is not reportable on any return, but rather "result[s] from the initiative of the tax collector and not, as is more usual with other income taxes, from the initiative of the taxpayer" (Govt.Br. at 5), it follows that this tax becomes payable only upon notice and demand by the Internal Revenue Service. For that reason, the part of chapter 62 we deem applicable is § 6155, which states that:

> Upon receipt of notice and demand from the Secretary or his delegate, there shall be paid at the place and time stated in such notice the amount of any tax (including any interest, additional amounts, additions to tax, and assessable penalties) stated in such notice and demand.

Because § 6155 prescribes the last date for payment of the accumulated earnings tax, none of the subdivisions of subsection 6601(c), giving rules for determining the date prescribed for payment, is applicable.[11] Under § 6601(a),

---

9. Our ruling disagrees with Rev.Rul. 66–237, 1966–2 Cum.Bull. at 508. That decision seems to hinge its conclusion that § 6601(f) (3) is inapplicable on the erroneous premise that the additions and penalties covered by the provision are not subject to deficiency procedures. To the extent that the ruling assumes without discussion that, because § 531 appears in chapter 1 of the Code, it cannot be within § 6601(f) (3), we believe, for the reasons given, that the assumption is unwarranted.

10. *"General Rule.*—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid

by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the rate of 6 percent per annum shall be paid for the period from such last date to the date paid."

11. Both plaintiff and defendant assume that § 6601(c) (4) ("Last date for payment not otherwise prescribed") applies, but since a last date for payment is set by § 6155, § 6601(c) (4), which deals only with taxes for which the last date for payment is *not* prescribed, is inapplicable. The other subdivisions of § 6601 (c) are plainly irrelevant to this case.

accordingly, taxpayer is liable for interest on the unpaid § 531 levy only between the receipt of notice-and-demand and payment.

Taxpayer has made timely payment under either § 6601(a) or § 6601(f) (3), and it is entitled to recover that amount of its payment which represents the interest charged upon the assessed accumulated earnings tax.[12] Judgment is entered for plaintiff to that effect. The amount of recovery will be determined under Rule 131(c).

### CONCLUSION OF LAW

Upon the foregoing opinion, which contains the necessary findings of fact made part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and judgment is entered to that effect, with the amount of recovery to be determined pursuant to Rule 131(c).

---

12. The opposite result has recently been reached in Bardahl Mfg. Co. v. United States, W.D.Wash., Civil No. 7899, decided November 10, 1969.