**Earl M. LATTERMAN, Appellant**

v.

**UNITED STATES of America.**

No. 88–3448.

United States Court of Appeals,
Third Circuit.

Argued Dec. 1, 1988.

Decided April 17, 1989.

Dennis J. Lewis, Laura A. Meaden (argued), Alder, Cohen & Grigsby, P.C., Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, William S. Estabrook (argued), Calvin C. Curtis, Tax Div., Dept. of Justice, Washington, D.C., for appellee.

William J. Kilberg, Baruch A. Fellner, Derry Dean Sparlin, Jr., Gibson, Dunn & Crutcher, Washington, D.C., for amicus curiae Wheeling–Pittsburgh Steel Corp.

Before SEITZ, STAPLETON and COWEN, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal presents the narrow issue of when interest begins to accrue on amounts due under § 4975(a) of the Internal Revenue Code. Section 6601(a) of the 1954 Code provides that interest begins to accrue on unpaid "tax" on the "last date prescribed for payment." Section 6601(e)(2) provides that when an amount owed is an "assessable penalty, additional amount, or addition to the tax," interest does not begin to accrue until ten days after the Internal Revenue Service issues notice and demand for the unpaid amount. In this appeal from a summary judgment granted in favor of the government against taxpayer Earl Latterman, we must decide whether the assessment against Latterman under § 4975(a)—denominated a "tax" by that section—should be considered a "tax" or a "penalty" for the purposes of § 6601.

## I.

The facts are not in dispute. On December 13, 1983, Earl Latterman received notice from the IRS that he owed excise taxes for the years 1975 through 1978 in the amount of $22,669.00. The IRS also charged Latterman with interest on the unpaid amounts, totalling $16,894.44.

The excise taxes were imposed pursuant to § 4975(a) of the Internal Revenue Code of 1954.[1] Section 4975(a) taxes "prohibited transactions" (defined in § 4975(c)) between "disqualified persons" (defined in § 4975(e)(2)) and certain pension plans. Pursuant to § 4975(a), Latterman was "taxed" at a rate of five percent of the amount of the prohibited transactions he had engaged in between 1975 and 1978.

Latterman paid the excise taxes on December 20, 1983. He initially refused, however, to pay interest on the taxes. Latterman argued to the IRS that the excise tax was a "penalty" rather than a "tax" within the meaning of § 6601. He contended, therefore, that no interest accrued on the amount assessed against him until ten days after he received notice and demand for payment from the IRS. The IRS rejected Latterman's position.

Under protest, Latterman paid the amount of interest demanded, and filed a claim for a refund of the interest payment. The IRS did not act within six months of Latterman's refund claim, *see* § 6532(a)(1), and Latterman accordingly filed suit in the United States District Court for the West-

---

1. References to the Code are to the 1983 version. That version does not differ in any respects material to the issues on this appeal from the versions in effect between 1975 and 1978.

ern District of Pennsylvania to recover the interest he had paid on the excise taxes.

Both parties filed motions for summary judgment. The district court ruled in favor of the IRS, finding that § 4975(a)'s use of the word "tax" means that the assessment should also be considered a "tax" and not a "penalty" for the purposes of § 6601. 691 F.Supp. 893 (1988 W.D.Pa.) (Diamond, J.). We exercise plenary review of this legal issue.

## II.

### A.

Section 6601 creates a "general rule" that interest accrues without any individualized notice and demand from the IRS that a tax is due:

> (a) General rule.—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the *last date prescribed for payment,* interest on such amount at an annual rate established under section 6621 shall be paid for the period from such last date to the date paid.

(emphasis added).

For the purposes of § 6601, the "last date prescribed for payment" is to be determined in accordance with chapter 62. § 6601(b). Section 6151, a part of chapter 62, is entitled "Time and place for paying tax shown on returns." Section 6151(a) provides that

> [e]xcept as otherwise provided in this subchapter, when a return of tax is required under this title or regulations, the person required to make such return shall, *without assessment or notice and demand from the Secretary,* pay such tax to the internal revenue officer with whom the return is filed, and *shall pay such tax at the time and place fixed for filing the return....*

(emphasis added). Thus, when a return for the payment of a tax is provided, the "last

date prescribed for payment" within the meaning of § 6601(c) is the date the return is required to be filed.

In contrast with § 6601(a)'s rule governing interest on taxes paid in conjunction with a return—so-called self-assessing taxes—is § 6601(e)(2)'s rule concerning interest accrual on non-self-assessing taxes:

> Interest shall be imposed under subsection (a) in respect of any *assessable penalty, additional amount, or addition to the tax* only if such *assessable penalty, additional amount, or addition to the tax* is not paid within 10 days from the date of *notice and demand* therefor, and in such case interest shall be imposed only for the period from the date of the notice and demand to the date of payment.

(emphasis added).

The terms "assessable penalty, additional amount, or addition to the tax" refer to two subchapter headings and their contents in chapter 68 of the code.[2] Section 6671 of Subchapter B, which is entitled "assessable penalties," provides that "[t]he penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary...." Subchapter A, concerned with "additional amounts" and "additions to the tax," contains an identically worded provision. *See* § 6662(a).

The contents of chapter 68 demonstrate why, when the assessments are "penalties, additional amounts, or additions to the tax," the taxpayer is required to pay only after notice and demand from the IRS rather than to self-assess the amounts due and report them on a return. The "penalty" and "additions" assessments of chapter 68 are all secondary assessments—they derive from some prior failure to pay a primary tax liability. For the most part, to assess under chapter 68, the IRS must draw a legal conclusion regarding the state of mind of the taxpayer concerning her failure to pay the primary liability. *See, e.g.,* § 6653(a) (negligent or intentional disregard of tax rules); § 6672 (willful failure

---

**2.** Courts have held, however, that the enumeration in chapter 68 is not exclusive: an assessment need not be listed in chapter 68 to be

found subject to the interest rule of § 6601(e)(2). *See Motor Fuel Carriers, Inc. v. United States,* 420 F.2d 702, 706–7 (Ct.Cl.1970).

to pay tax); § 6673 (instituting frivolous proceedings in tax court for delay). The taxpayer often has a defense of good faith or reasonable cause. *See, e.g.,* § 6656(a) (defense of reasonable cause and absence of willful neglect); § 6657 (bad checks; defense of good faith and reasonable cause to believe check would be paid). Such assessments are thus not well suited—for legal and practical reasons—to self-assessing by the taxpayer. Accordingly, in the case of the assessments enumerated in chapter 68, the IRS does not provide forms and instructions for reporting amounts due, and the taxpayer is never required to self-assess.

The fact that all of the assessments in chapter 68 are only required upon notice and demand by the IRS explains the different interest-payment rules set out in § 6601. *See Motor Fuel Carriers v. United States,* 420 F.2d 702, 707 (Ct.Cl.1970). The clear, overarching purpose of § 6601 is to allow the government to recover amounts due in "real" (inflation-adjusted) dollars. That section therefore ties its interest rate to the prime rate. § 6621. When a taxpayer owes the government money and delays payment after the date on which payment was due, the government should not have to suffer a depletion in real dollars because of that delay and, conversely, the taxpayer should not reap the benefit of delaying payment, thereby in effect diminishing the amount owed.

The question of when interest ought to begin accruing on an amount depends on when the amount was first owed by the taxpayer. Where an amount is assessed at the time of notice and demand, which is the universal situation in chapter 68, the amount is first owed at that time, and the IRS gets paid in real dollars if interest then begins to accrue. Until notice and demand, the taxpayer does not owe the amount assessed, even though that amount may have some relation to a prior amount owed and unpaid. *See, e.g.,* § 6672(a) (assessment equal to amount owed but not paid of tax "willfully" evaded). In contrast, when an amount is self-assessable, the taxpayer owes the amount in question at the time he should have reported it. *See Ray E. Loper Lumber Co. v. United States,* 444 F.2d

301, 304 (6th Cir.1971). If the government is to collect an assessment in real dollars, interest must begin to accrue when the tax should have been reported. Thus, in self-assessing situations, § 6601(a) governs, while in non-self-assessing situations, § 6601(e)(2) governs.

This understanding of § 6601 has been universally adopted by the courts in explaining the distinction between interest payment under § 6601(a) and 6601(e)(2). *See Motor Fuel Carriers,* 420 F.2d at 707; *Ray E. Loper Lumber,* 444 F.2d at 304; *Bardahl Manufacturing Corp. v. United States,* 452 F.2d 604, 605 (9th Cir.1971). Moreover, this position was well established before the passage of ERISA and the addition of § 4975 to the Code.

### B.

We turn next to § 4975. Section 4975 was added to the Code by the Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. No. 93–406, § 2003, 88 Stat. 971 (1974). It is one of several "two tiered" excise taxes on various "prohibited acts." *See* § 4962. The first tier of these taxes consists of a modest assessment. If the prohibited act is not corrected and the I.R.S. sends notice to the taxpayer, a second-tier tax is imposed. The second tier is "intended to be sufficiently high to compel voluntary compliance" with the Code provisions. S.Rep. No. 1034, 96th Cong., 2d Sess., *reprinted in* 6 U.S.Code Cong. & Admin.News 7189, 7191 (1980).

Latterman was charged interest on amounts assessed under the first tier of § 4975:

(a) Initial taxes on disqualified person.— There is hereby imposed a tax on each prohibited transaction. The rate of tax shall be equal to 5 percent of the amount involved with respect to the prohibited transaction for each year (or part thereof) in the taxable period. The tax imposed by this subsection shall be paid by any disqualified person who participates in the prohibited transaction (other than

a fiduciary acting only as such).[3]

Section 4975's second tier consists of a 100% assessment:

(b) Additional taxes on disqualified person.—In any case in which an initial tax is imposed by subsection (a) on a prohibited transaction and the transaction is not corrected within the taxable period, there is hereby imposed a tax equal to 100 percent of the amount involved. The tax imposed by this subsection shall be paid by any disqualified person who participated in the prohibited transaction. . . .

Section 4975(a), the first tier, "automatically" imposes a 5% assessment. S.Rep. No. 1034, 96th Cong., 2d Sess., *reprinted in* 6 U.S.Code Cong. & Admin.News 7191 (1980) (explaining the two-tier excise tax system). That is, unlike § 4975(b), which, when read together with other sections of the Code, requires notice and other procedural protections before it can be imposed,[4] § 4975(a) imposes a tax once the "prohibited transaction" has taken place. The time and place for payment, *see* § 6151(a) (where return is required, tax must be paid when return must be filed), however, are not stated by the section. Like the other "first tiers" of the excise taxes and unlike the contents of chapter 68, § 4975(a) leaves for the IRS the question of determining when the tax must be paid.

One way for the IRS to make this determination is to provide a return for the reporting of tax due under § 4975(a), a task explicitly delegated by the Code to the Secretary of the Treasury, *see* §§ 6001, 6011(a), and in turn delegated by the Secretary to the Commissioner of Internal Revenue, Treas.Regs. §§ 301.7805–1(a), 301.-7805–1(b). When such a return is provided, the tax must be paid "at the time and place fixed for filing the return." § 6151(a). By providing such a return and requiring that it be filed, then, the I.R.S. makes the tax a self-assessing one.

In 1975, the I.R.S. published notice regarding the availability of Form 5330. Announcement 75–1, I.R.B. 1975–1, 25; Standard Fed. Tax Reporter ¶ 6327 (CCH) (1975). That notice stated that Form 5330 had been "developed for reporting and paying the excise tax imposed by section 4975 of the Code." Form 5330 requires that it must be filed "for each year (or part thereof) in the 'taxable period' applicable to a prohibited transaction" under § 4975. Instructions were provided with the form for figuring the tax due. Accordingly, by publishing and making available Form 5330 and its instructions, the I.R.S. made the tax due under § 4975(a) a self-assessing one.[5] The "last date prescribed for payment" for the purposes of § 6601(a) thereby became the date the tax return for a tax year was due.

### III.

We turn, then, to address the question of whether an amount due under § 4975(a) should be considered a "tax" within the meaning of § 6601(a) or a "penalty" within the meaning of § 6601(e)(2). We conclude that such an amount due should be treated as a "tax" because Congress denominated the § 4975(a) assessment as a "tax," and

---

3. The "taxable period" referred to in subsection (a) is defined as "the period beginning with the date on which the prohibited transaction occurs and ending on the earliest of . . . the date of mailing a notice of deficiency . . . , the date on which the tax . . . is assessed, or . . . the date on which correction of the prohibited transaction is completed." § 4975(f)(2).

4. *See* § 4961 (providing for "supplemental proceeding" in which court determines whether a prohibited transaction was "corrected"); § 4975(f)(2) & (b) (second-tier tax not imposed before taxable period ends; taxable period does not end until, inter alia, notice is given of tax liability under first tier).

5. Although Latterman discusses a hypothetical case in which a taxpayer might need to await an I.R.S. ruling in order to determine her tax liability under § 4975, Latterman does not argue that he was unable to assess his own liability without receiving notice from the I.R.S. This case, therefore, is not similar to the one arising in *Motor Fuel Carriers,* 420 F.2d 702, in which the court found that the accumulated earnings tax was not self-assessable because a taxpayer could not figure her liability without an administrative determination by the I.R.S. *Id.* at 707.

because amounts due under § 4975(a) are self-assessing.

## A.

Congress' use of the word "tax" in § 4975 is highly significant. Section § 6601(a) attaches certain legal consequences to things called "taxes": interest begins to accrue on them on the "last date prescribed for payment," before notice and demand. One way for Congress to indicate that it intends one provision of a statute giving legal effect to things denominated by a term is to use that same term in the section it wishes to be implicated. Using the term "tax" rather than "penalty" or "addition to the tax" in § 4975 raises a presumption that Congress intended the provisions for a "tax" in § 6601 to govern.

## B.

The fact that the tax under § 4975(a) is self-assessing further supports the validity of this presumption. In § 6601(a), Congress created a default rule: unless otherwise specified, interest accrues "on the last day prescribed for payment," and where an amount must be reported on a tax return, that day is the day the tax return must be filed, § 6151(a).

As we have noted, in 1975 the I.R.S. provided a form and instructions for the reporting and paying of taxes due under § 4975(a). By doing so it indicated that those taxes were due when the return for the tax year in which the "prohibited transaction" occurred was due. The "date prescribed for payment" within the meaning of § 6601 was when Latterman was required to file his return for each tax year in which he engaged in a "prohibited transaction." He therefore owed the amounts in question several years before receiving notice from the I.R.S. in 1983. Accordingly, § 6601(a) governs and interest on the liability began to accrue in each tax year in which the principal was not paid.

## C.

Latterman urges that, despite its denomination as a "tax," § 4975 is a "penalty,"

and that the presumption raised by the use of the word "tax" is thereby rebutted. Latterman reaches this result by arguing that (1) if an assessment is intended to prohibit, deter, or punish conduct rather than raise revenue, it can be characterized as "penal"; (2) if it can be so characterized, it is a "penalty" for the purposes of 6601; and (3) interest therefore begins to accrue only after notice and demand.

The flaw in this syllogism lies between steps 1 and 2, that is, in Latterman's assumption that an assessment with a "penal" purpose must ineluctably be characterized as a "penalty" within the meaning of § 6601(e)(2). Because we find this conclusion erroneous, we can assume without deciding that § 4975(a)'s assessment is "penal" in nature.

We reject Latterman's theory for two reasons. First, we do not understand § 6601 as suggesting that, because a purpose of an assessment is penal, the government has no interest in receiving amounts due in real dollars. Indeed, the principle underlying § 6601 applies equally in revenue-raising assessments as in "penal" assessments. Charging interest in the case of a "penal" assessment makes sense because, although the government may be less concerned with capturing revenue, it is nonetheless concerned with the dilution of the deterrent value of a penal assessment that would result if no interest accrued on amounts owed. Thus it is that interest *is* charged on "penalties" and the other assessments found in chapter 68, but only after the I.R.S. has issued notice and demand. Since interest does accrue on penal assessments, citing the penal purpose of an assessment simply does not support an argument against an assessment of interest. The relevant inquiry under § 6601 is *when* interest begins to accrue, and that inquiry has nothing to do with the *purpose* of an assessment but rather with the *timing* of its due date.

Second, we find nothing in § 6601 that suggests that Congress intended courts to engage in the rather slippery business of weighing the relative importance of a penal purpose compared with a revenue-raising

purpose underlying an assessment in order to determine when interest begins to accrue. Because many assessments serve both penal and revenue-raising purposes, Latterman's proposal that assessments with penal purposes do not accrue interest until after notice and demand would, if adopted, unduly undermine the "general rule" that interest accrues when the tax is due. *See* § 6601(a). His theory, therefore, is inconsistent with § 6601's language and purpose.

Finally, Latterman refers us to several cases that he believes should lead us to conclude that an assessment under § 4975 is a "penalty" within the meaning of § 6601(e)(2). Two of these cases interpret the interaction of § 4941 of the Internal Revenue Code [6]—a section similar to § 4975—with provisions of the 1898 Bankruptcy Act (repealed in 1979). *In re Unified Control Systems, Inc.*, 586 F.2d 1036 (5th Cir.1978); *In re Kline*, 403 F.Supp. 974 (D.Md.), *aff'd*, 547 F.2d 823 (4th Cir. 1977) (per curiam).

For example, in *Unified Control Systems*, the court framed the issue before it as "whether 4941 of the Internal Revenue Code of 1954 is a penalty for purposes of 57j of the Bankruptcy Act." 586 F.2d at 1037. Section 57j of the 1898 Bankruptcy Act provided that "penalties" are a general exception to the rule of § 64a(4) that taxes due that are not discharged in bankruptcy generally take priority over most other claims. Where the purpose of a tax assessment is penal, and not for generating revenue, that penal purpose will not be fulfilled if the tax debtor is in bankruptcy and the creditors are the ones paying the tax liability. If penalties had priority over other creditors, the creditors would be punished rather than the bankrupt. *See generally*

James W. Moore & Lawrence P. King, 3 *Collier on Bankruptcy* ¶ 57.22, pp. 382, 391–92 (14th ed. 1977). Thus § 57j made the penal nature of a tax assessment control the outcome of § 57j's applicability; it required that courts examine whether a tax assessment serves a penal or revenue-generating purpose.

Section 6601 of the tax code, as we have noted, mandates no such inquiry. There is no reason, as there is in the context of § 57j, why penal assessments should not be subject to interest accrual from the time the assessment is owed. The holdings of *Unified Control* and the other cases construing § 57j therefore cannot be transplanted to the legal context of this appeal.

Several other courts have chosen to adopt the reasoning of the cases construing § 57j in holding that either § 4941(a) or § 4975(a) should be considered "penalties" for the purposes of § 6601. *Farrell v. United States*, 484 F.Supp. 1097 (E.D.Ark. 1980); *Rockefeller v. United States*, 572 F.Supp. 9 (E.D.Ark.1982), *aff'd*, 718 F.2d 290 (8th Cir.1983); *Feldman v. United States*, No. 85–3904 (S.D.Fla. Oct. 30, 1986). Because all of these cases fail to analyze the purposes of § 6601 or the meaning of the word "penalty" in the context of § 6601, and because we find their conclusion that the bankruptcy cases are "controlling," *Farrell*, 484 F.Supp. at 1099, to be unwarranted, we decline to follow them.[7]

### IV.

For the foregoing reasons, we will affirm the judgment of the district court against Latterman and in favor of the government.

---

**6.** The relevant portions of § 4941 are as follows: (a) Initial taxes.—(1) On self-dealer.—There is hereby imposed a tax on each act of self-dealing between a disqualified person and a private foundation. The rate of tax shall be equal to 5 percent of the amount involved with respect to the act of self-dealing for each year (or part thereof) in the taxable period.... (b) Additional taxes.—(1) On self-dealer.—In any case in which an initial tax is imposed by subsection (a)(1) on an act of self-dealing by a

disqualified person with a private foundation and the act is not corrected within the taxable period, there is hereby imposed a tax equal to 200 percent of the amount involved.

**7.** Latterman also seeks litigation costs, including attorneys' fees, as a "prevailing party" under § 7430 of the Code. Our affirmance of the district court means that Latterman can not be considered a prevailing party for the purposes of § 7430.