# United States Tax Court

T.C. Memo. 2024-6

CLAIR R. COUTURIER, JR.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 19714-16.                          Filed January 17, 2024.

————

*Michael Eddison Romero*, *Alvah Lavar Taylor*, *Daniel W. Soto*, and *Jonathan T. Amitrano*, for petitioner.

*Hilary E. March*, *Laura A. Price*, *Noelle White*, *Roger Kang*, *Patricia P. Wang*, and *Edward T. Mitte*, for respondent.

MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a determination by the Internal Revenue Service (IRS or respondent) that petitioner in 2004 made an excess contribution of $25,132,892 to his individual retirement account (IRA). Section 4973(a)[1] imposes a "tax in an amount equal to 6 percent of the amount of the excess contributions" that a taxpayer makes to an IRA in any given year. This excise tax continues to apply for future years, until such time as the original excess contribution is distributed to the taxpayer and included in income. *See* § 4973(b)(2).

In 2016 the IRS issued petitioner notices of deficiency that determined, for tax years 2004–2008 and 2009–2014, respectively, excise tax

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] deficiencies under section 4973 in the aggregate amount of $8,476,705. The notices also determined additions to tax under section 6651(a)(1) and (2) and accuracy-related penalties under section 6662(a). Respondent has since conceded the section 6651(a)(2) additions to tax and the penalties.

Currently before the Court is respondent's Motion for Partial Summary Judgment. He seeks a ruling that section 4973 imposes a "tax," not a "penalty" to which the provisions of section 6751(b) could apply. We agree with respondent and will accordingly grant his Motion.

*Background*

The following facts are derived from the parties' pleadings, Motion papers, and attached Exhibits. They are stated solely for the purpose of deciding the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner resided in Washington when he petitioned this Court. Absent stipulation to the contrary, appeal of this case would apparently lie to the U.S. Court of Appeals for the Ninth Circuit. *See* § 7482(b)(1)(A), and (2).

Petitioner was employed as a corporate executive until at least 2004. In conjunction with his employment he participated in multiple deferred compensation arrangements. As of 2004 he owned 4,586 shares in an employee stock ownership plan (ESOP), a qualified retirement plan. He also held interests in several compensatory plans, none of which was qualified. These included a Compensation Continuation Agreement, an Incentive Stock Option plan, and a Value Enhancement Incentive plan.

In 2004, as part of a corporate reorganization, petitioner was offered (and he accepted) a $26 million buyout from his company. According to respondent, the $26 million was paid in exchange for his ESOP stock and for his relinquishment of the interests he held in the nonqualified plans. The $26 million of consideration took the form of a $12 million cash payment to his IRA and a $14 million promissory note payable to his IRA. The promissory note was paid in full in 2005.

On April 11, 2005, petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 2004. On line 16(a) of that return he characterized the $26 million as a nontaxable "rollover contribution" to his IRA. He left blank line 59, "Additional tax on IRAs, other qualified retirement plans, etc." He timely filed Forms 1040 for 2005–2014, again

[*3] leaving line 59 blank. He did not include with any of these returns a completed Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts.

Upon examination of petitioner's returns the IRS concluded that the bulk of the $26 million received by his IRA was attributable to his relinquishment of rights under the non-ESOP deferred compensation plans, which were not eligible for tax-free rollover. It accordingly determined that $25,132,892 of the $26 million constituted an "excess contribution" to his IRA under section 4973(a)(1) and (b)(2). On June 10, 2016, the IRS issued the notices of deficiency described above.

Petitioner timely petitioned this Court. On September 17, 2020, he filed an Amended Petition alleging that the exaction imposed by section 4973 is a "penalty" within the meaning of section 6751. He assigned error to the 2004–2014 excise tax deficiency determinations on the theory that the IRS was required to obtain, but allegedly failed to secure, supervisory approval for "the initial determination of such assessment." *See* § 6751(b)(1). On October 19, 2020, respondent filed an Answer to the Amended Petition, denying petitioner's allegation and urging that section 6751(b) "does not apply to . . . [section] 4973."

On November 1, 2023, respondent filed the instant Motion for Partial Summary Judgment. He contends that the exaction imposed by section 4973 is a "tax" and not a "penalty" to which section 6751(b) could apply. On November 28, 2023, petitioner filed a Response opposing the Motion.

*Discussion*

A.   *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party (here petitioner). *Sundstrand Corp.*, 98 T.C. at 520. The question presented—whether the exaction imposed by section 4973 is a "tax" rather than a "penalty"—

**[\*4]** is purely one of law, and no material facts are in genuine dispute. We conclude that this issue may be adjudicated summarily.[2]

B.    *Analysis*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." Section 6751(c) defines "penalty" generally to include "any addition to tax or any additional amount." But section 6751(b)(2) exempts from the requirement of supervisory approval "[a]ny addition to tax under section 6651, 6654, or 6655" and "any other penalty automatically calculated by electronic means."

The question presented is whether the exaction Congress imposed in section 4973 is a "penalty" within the meaning of section 6751. "We begin our inquiry, as we must, by considering the plain and ordinary meaning of the text Congress enacted." *Klein v. Commissioner*, 149 T.C. 341, 351 (2017) (citing *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009)).

Section 4973 is captioned "Tax on excess contributions to certain tax-favored accounts and annuities." Section 4973(a), captioned "Tax imposed," imposes, in the case of six different types of tax-favored accounts, "a tax in an amount equal to 6 percent of the amount of the excess contributions to such individual's account[]." Subsection (a)(1) imposes this tax on excess contributions to an IRA. In paragraphs (2) through (6) of subsection (a), this tax is imposed on excess contributions to an "Archer MSA," an "individual retirement annuity," a "Coverdell education savings account," a "health savings account," or "an ABLE account," all as defined in other sections of the Code.

The flush text of section 4973(a) refers to this exaction four times, in each case describing it as a "tax." The term "penalty" appears nowhere in section 4973(a) or in any of the provision's other six subsections. The statute's plain text thus establishes that the exaction imposed by section 4973 is a "tax" under the Code. *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S. 519, 564 (2012) (assigning significance to Congress's choice of label in holding that "individual mandate" was

---

[2] We held the first phase of trial in this case in September 2023, hearing expert testimony, and the second phase is scheduled for April 2024. Both parties request that we decide the legal question presented by this Motion before the second phase of the trial begins.

[*5] not a "tax" for purposes of section 7421(a), which bars suits seeking to "restrain[] the assessment or collection of any tax").

This textual analysis suffices to resolve the issue. But for completeness, we note that numerous other factors, all pointing in the same direction, confirm our conclusion. The location of section 4973 in the Code supplies further evidence that the exaction it imposes is a "tax" and not a "penalty." Congress placed section 4973 in Subtitle D of the Code, captioned "Miscellaneous Excise Taxes." Subtitle D currently consists of 21 chapters (31 through 50A) and comprises sections 4041 through 5000D. It sets forth a vast array of excise taxes, including retail excise taxes, manufacturers excise taxes, environmental taxes, and taxes on the undistributed income of mutual funds and real estate investment trusts. It imposes excise taxes on (among other things) transportation by air and water, policies issued by foreign insurers, wagering, "golden parachute payments," certain group health plans, "cosmetic services," and "foreign procurement."

Section 4973 is contained within Subtitle D, Chapter 43, captioned "Qualified Pension, Etc., Plans." Currently comprising 18 separate Code sections, Chapter 43 imposes excise taxes on various actions (and failures to act) in connection with tax-favored plans and accounts. These taxes are triggered (for example) by failure to meet minimum funding standards, nondeductible contributions, excess contributions, excess accumulations, prohibited transactions, reversion of qualified plan assets to an employer, and failure to meet various requirements for tax exemption. The taxes imposed by Chapter 43 resemble those set forth in Chapter 41 (imposing excise taxes on excess lobbying expenditures by public charities) and Chapter 42 (imposing excise taxes on self-dealing, failure to distribute income, and excess business holdings of private foundations).

On several occasions we have held that an exaction constitutes a tax where Congress used the term "tax" in the Code provision imposing it and situated that provision in a chapter of the Code that provides for "taxes." *See, e.g.*, *Grajales v. Commissioner*, 156 T.C. 55 (2021) (holding that the "additional tax" imposed by section 72(t) is a "tax" and not a "penalty" for section 6751(b) purposes), *aff'd*, 47 F.4th 58 (2d Cir. 2022). Section 72(t) is captioned "10-percent additional tax on early distributions from qualified plans," and it provides that "the taxpayer's tax under this chapter . . . shall be increased" by the relevant amount. Section 72 appears in Subtitle A, Chapter 1 of the Code, captioned "Normal

[*6] Taxes and Surtaxes." For these reasons, we held in *Grajales* that the 10% exaction is a "tax." *See Grajales*, 156 T.C. at 61–62.[3]

Even closer to home is the decision by the U.S. Court of Appeals for the Third Circuit in *Latterman v. United States*, 872 F.2d 564 (3d Cir. 1989). That case involved section 4975, which (like section 4973) is contained within Subtitle D, Chapter 43. Section 4975 imposes "a tax" on any prohibited transaction engaged in by any disqualified person of a tax-exempt plan or entity (including an IRA). *See* § 4975(a). The initial tax currently imposed is 15% of the amount involved in the prohibited transaction, rising to 100% if the transaction is not corrected within the taxable period. *See* § 4975(a) and (b).[4] The Third Circuit held that section 4975 imposes "a tax" for purposes of section 6601, which charges interest "[i]f any amount of tax imposed by this title" is not timely paid. *See Latterman*, 872 F.2d at 570. In so holding the court emphasized the statutory text, which characterizes the exaction as "a tax."[5]

By contrast, Congress generally has situated "penalties" in Subtitle F of the Code, captioned "Procedure and Administration." Subtitle F currently has 20 chapters (61 through 80) and comprises sections 6001 through 7874. Most penalties appear in Chapter 68, which has three subchapters. Subchapter A, comprising sections 6651 through 6665, covers additions to tax, additional amounts, accuracy-related penalties, and fraud penalties. Subchapter B covers assessable penalties. Subchapter C, consisting solely of section 6751, sets forth "Procedural Requirements" applicable to all of the foregoing items. The fact that the exaction at issue does not appear in Chapter 68 of the Code provides evidence that it is not a "penalty" to which the "procedural requirements" of section 6751(b) apply. *See Grajales v. Commissioner*, 47 F.4th

---

[3] We are unpersuaded by petitioner's assertion that *Grajales* was "wrongly decided" by this Court and the Court of Appeals for the Second Circuit.

[4] The court in *Latterman* addressed an earlier version of section 4975 that imposed the "initial tax" at a rate of 5%. Congress increased the "initial tax" rate to 10% in 1996 and to 15% one year later. *See* Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1453(a), 110 Stat. 1755, 1817; Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1074(a), 111 Stat. 788, 949.

[5] The Third Circuit also noted that a section 4975 liability (like other taxes) is "self-assessed"—i.e., required to be reported on a return filed by the taxpayer—whereas "penalties" are determined by the Commissioner during an examination. *See Latterman*, 872 F.2d at 566–69. The same is true for section 4973 liabilities, which are required to be reported by taxpayers on Form 5329. *See Paschall v. Commissioner*, 137 T.C. 8, 15–17 (2011).

**[\*7]** at 61 (noting that section 72(t) does not "appear[] in chapter 68 with most of the other penalties of the Code").

Further evidence that section 4973 does not provide for a "penalty" may be derived from Congress's uninterrupted use of the term "tax" to describe the exaction thus imposed. Section 4973 was added to the Code in 1974. *See* Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, § 2002(d), 88 Stat. 829, 966–67. Section 6751 was added to the Code in 1998, and the same law also amended section 4973. *See* IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, §§ 3306, 6004(d)(10), 112 Stat. 685, 744, 795. Congress in 1998 did not alter section 4973's consistent reference to the exaction it imposes as "a tax," nor did Congress relocate that section from Subtitle D to Subtitle F. There is no evidence (in the 1998 Act or elsewhere) that Congress intended to bring the section 4973 excise tax within the ambit of section 6751. *See Chadwick v. Commissioner*, 154 T.C. 84, 91 n.2 (2020) (quoting *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.")).

If more evidence were needed that section 4973 imposes a "tax" and not a "penalty," it is well established that deficiencies determined under section 4973 may generate "additions to the tax." Section 6651(a)(1) provides that, in case of failure to file any required return, there shall be added to the amount "required to be shown as tax on such return" an addition to the tax not to exceed 25%. Section 6651(a)(2) provides for a similar "addition to the tax" in case of any failure "to pay the amount shown as tax on any return." We have held that, in the case of excess contributions to an IRA, the return required to be filed by the taxpayer is Form 5329 (unless the taxpayer supplies the same information elsewhere on his Form 1040). *See Paschall*, 137 T.C. at 15–17.

A taxpayer who fails to file Form 5329 (lacking reasonable cause) is liable under section 6651(a)(1) for an "addition to the tax" on the deficiency determined under section 4973. *See Paschall*, 137 T.C. at 20–24; *Repetto v. Commissioner*, T.C. Memo. 2012-168, 103 T.C.M. (CCH) 1895, 1904–05. And if the Commissioner prepares a proper "substitute for return" for such a taxpayer, *see* § 6020(b), the taxpayer is liable for an "addition to the tax" under section 6651(a)(2) for failure "to pay timely the tax shown on a return," *see Repetto*, 103 T.C.M. (CCH) at 1904. These precedents show that the exaction imposed by section 4973 is "a tax"; otherwise, no "additions to the tax" could have been sustained. No

**[\*8]** provision of the Code authorizes the imposition of "additions to the tax" with respect to penalties.[6]

This straightforward construction of the statute is supported by common sense. Congress enacted section 6751(b), requiring supervisory approval of penalties, to help ensure that penalties are asserted only "where appropriate" and "not as a bargaining chip" during settlement negotiations. *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021) (quoting S. Rep. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601). In enacting this provision, Congress was responding to concerns that revenue agents might gin up penalties artificially at the end of an examination, then offer to remove them if the taxpayer agreed to accept the examination's results. Needless to say, a revenue agent could not plausibly assert a section 4973 excise tax at the conclusion of an ordinary income tax audit in an effort to induce settlement. Because section 4973 exactions cannot be used as "bargaining chips" in this way, Congress is unlikely to have envisioned section 6751(b) as applying to them.

Acknowledging that section 4973 refers to the exaction it imposes as "a tax," petitioner urges that we look past the statute's text and engage in a "functional analysis." In his view, Congress intended that section 6751(b)(1) should apply, not only to exactions "that are labeled as 'penalties,'" but also to exactions that "function as 'penalties'" by being "punitive or penal in nature." He asserts that section 4973 has a punitive function because it is "designed to deter taxpayers from behaving in a certain way," i.e., from making excess contributions to their IRAs.

We disagree that a "functional analysis" is appropriate. The issue before us is one of statutory construction, and the Supreme Court directs us to look to the statutory text as "the best evidence of Congress's intent." *NFIB*, 567 U.S. at 544. In this regard, "it makes sense to be guided by Congress's choice of label." *Id.* at 564. As discussed *supra*

---

[6] Although respondent has conceded that petitioner is not liable for section 6662 accuracy-related penalties, the IRS regularly asserts (and we have sustained) such penalties against taxpayers who underpay amounts owed under section 4973. *See Dunn v. Commissioner*, T.C. Memo. 2015-208, 110 T.C.M. (CCH) 413, 415–16. The fact that the IRS may impose such penalties on top of the section 4973 exaction indicates that the exaction is not itself a "penalty."

**[\*9]** pp. 4–6, section 4973 expressly labels its exaction a "tax," consistently with the larger statutory structure. *See Grajales*, 156 T.C. at 58.[7]

Even if a "functional analysis" were thought appropriate, petitioner has supplied no logical framework for determining which excise taxes "function as penalties." Basic economic theory tells us that taxes, like penalties, can be used to incentivize or discourage certain behaviors. Subtitle D imposes more than 60 distinct excise taxes, and many of them follow this pattern. The taxes imposed by Chapters 41 through 43 in particular serve what is principally a regulatory function—persuading public charities, private foundations, employee trusts, and other tax-favored plans to comply with the requirements Congress has ordained for continued tax-exempt status.

Section 4973 imposes a 6% exaction on the amount of an excess contribution to an IRA. Although petitioner regards this exaction as punitive, other provisions within Chapters 41 through 43 impose taxes at higher rates. Section 4945 imposes a 20% tax on taxable expenditures by a private foundation. Section 4942 imposes a 30% tax on undistributed income of a private foundation. Section 4975 imposes a 15% tax on the amount involved in any "prohibited transaction" engaged in by a tax-exempt plan (including an IRA), and this tax rises to 100% if the transaction is not corrected within the taxable period. *See* § 4975(a) and (b). Although section 4975 in petitioner's view would presumably "function as a penalty," the Third Circuit has held—consistently with the statutory text—that section 4975 imposes "a tax." *See Latterman*, 872 F.2d at 568–69. Petitioner has not explained why the result should be different here.

Petitioner asserts that the placement of section 4973 in the Code is "irrelevant," citing section 7806(b) for the proposition that "[n]o inference, implication, or presumption of legislative construction shall be . . . made by reason of the location . . . of any particular [Code] section." But while location is not determinative, it is not irrelevant either. The fact that Congress situated section 4973 in Chapter 43 of Subtitle D

---

[7] Petitioner errs in asserting that we adopted a "functional analysis" when determining the scope of section 6751(b)(1) in *Chadwick*. We there held that "trust fund recovery penalties" imposed under section 6672 are "penalties" requiring supervisory approval. *See Chadwick*, 154 T.C. at 94. In so holding, we relied (as we do here) on the statute's text and placement in the Code. *See id.* at 90–92. Section 6672(a) explicitly imposes a penalty, providing that a responsible officer who fails to pay or collect tax "shall . . . be liable to a penalty" in a specified amount. And section 6672 is situated in Chapter 68, Subchapter B, which provides for "Assessable Penalties."

**[\*10]** (imposing excise taxes), rather than in Chapter 68 of Subtitle F (imposing penalties), is simply one indication that the exaction in question is not a "penalty" within the meaning of section 6751. We regularly consider the similarity of terms and provisions in the Code—as well as a section's placement within the Code—as aids to interpretation. *See Chadwick*, 154 T.C. at 90–91; *El v. Commissioner*, 144 T.C. 140, 147 n.10 (2015) (citing cases).

Finally, petitioner seeks refuge in section 6751(c), which provides that the term "penalty" includes "any additional amount." He suggests that an "additional amount" means "an amount which is in addition to the taxpayer's income tax." Because the exaction imposed by section 4973 is "added to any income tax a taxpayer owes," petitioner insists that it is an "additional amount" and thus a "penalty."

We disagree. "[W]e have repeatedly held that the term 'additional amounts' has a technical meaning in the Code, referring specifically to penalties set forth in chapter 68, subchapter A." *Whistleblower 22716-13W v. Commissioner*, 146 T.C. 84, 93–94 (2016); *accord Grajales*, 156 T.C. at 58–59 (same). Section 4973 does not appear in Chapter 68, Subchapter A, captioned "Additions to the Tax and Additional Amounts." The exaction it imposes is therefore not an "additional amount" within the meaning of section 6751(c).

To implement the foregoing,

*An order will be issued granting respondent's Motion for Partial Summary Judgment.*